BROWN v DEPARTMENT OF STATE

ADMINISTRATIVE LAW—DELEGATION OF DUTIES—DRIVER AND VEHICLE SERVICES—DRIVER'S LICENSE SUSPENSIONS.
    The Motor Vehicle Code confers upon the Director of the Division of Driver and Vehicle Services the authority to delegate to others the responsibilities conferred upon him by the code, including his responsibilities relative to the suspension and revocation of licenses, and where the Motor Vehicle Code imposes any duties upon him he has the authority to act directly or through his duly authorized officers, agents, and employees.

Appeal from Ingham, Donald L. Reisig, J. Submitted Division 2 January 5, 1973, at Lansing. (Docket No. 14077.) Decided February 26, 1973. Leave to appeal denied, 389 Mich 802.

Complaint by John C. Brown against the Michigan Department of State for reinstatement of plaintiff's driver's license. Judgment for plaintiff. Defendant appeals. Reversed.

*Denfield, Timmer & Seelye, P. C.* (by *Clifford W. Taylor),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Charles D. Hackney,* Assistant Attorney General, for defendant.

Before: QUINN, P. J., and R. B. BURNS and C. J. BYRNS,* JJ.

REFERENCE FOR POINTS IN HEADNOTE
1 Am Jur 2d, Administrative Law § 180.
* Circuit judge, sitting on the Court of Appeals by assignment.

R. B. BURNS, J. Plaintiff was ordered by the Director of the Division of Driver and Vehicle Services, a division within the Department of State, to submit to a reexamination of his competence to operate a motor vehicle. The reexamination was conducted by one Thomas Hall, a driver-improvement analyst employed by the Division. Mr. Hall determined that plaintiff's driving privileges should be suspended because of an "unsatisfactory driving record". Mr. Hall immediately served upon plaintiff an "Order of Suspension or Revocation" signed in facsimile by the Director of Driver Records and demanded the immediate surrender of plaintiff's license. The license was surrendered. Plaintiff exercised his statutory right to apply for reinstatement of his license. Reinstatement was denied, and plaintiff's license was revoked.

Twice plaintiff appeared before the Ingham County License Appeal Board. Both times the board refused to reverse the revocation. Plaintiff then commenced this action in the Ingham County Circuit Court pursuant to MCLA 257.323; MSA 9.2023. The revocation was stayed pending a hearing. MCLA 257.323a; MSA 9.2023(1). Subsequent to a hearing the Circuit Court held that the revocation of plaintiff's license was void because the relevant sections of the Michigan Vehicle Code do not authorize the Director of the Division of Driver and Vehicle Services to delegate his authority to order and conduct reexaminations or to recommend suspension or revocation of licenses to either a driver-improvement analyst or the Director of Driver Records.

The Department of State appeals.

Subsection (a) of MCLA 257.320; MSA 9.2020, provides in part:

"Whenever the commissioner has reason to believe that any licensed operator * * * is or has become incompetent to drive a motor vehicle * * * or as a driver has in 1 or more instances been involved in an accident resulting in the death of a person, or within a 24-month period has been involved in 3 accidents resulting in personal injury or damage to the property of any person in each accident in excess of $200.00 and the official police report indicates any moving violation on the part of the driver or drivers involved in each of the accidents; or whenever any person has charged against him a total of 12 or more points * * * within a period of 2 years, the commissioner * * * may conduct an investigation and require an examination of such person in the county wherein such person may reside, and upon good cause appearing thereon, may thereupon recommend to the department the suspension or revocation of the license of such person or may require. the immediate surrender of the license of each person, * * * . The commissioner shall, in all cases, prescribe the period of suspension and the recommendation of the commissioner in the premises shall, in all cases, be binding upon and followed by the department."

MCLA 257.203a; MSA 9.1903(1), provides:

"Whenever in chapter 3 of this act, being sections 301 to 327, inclusive, of this act, any reference is made to 'commissioner' such reference shall be deemed intended to be made to the director of the division of driver and vehicle services appointed under the provisions of section 203, above, of this act."

Admittedly, MCLA 257.203a; MSA 9.1903(1) does not confer upon the "commissioner" a general authority to delegate, and MCLA 257.320(a); MSA 9.2020(a) does not confer specific authority to delegate relative to the revocation of licenses. Because the "commissioner" is expressly allowed to delegate his authority to issue licenses, MCLA 257.309(a); MSA 9.2009(a), plaintiff claims that the absence of such express authority relative to the

revocation of licenses demonstrates the Legislature's intent to deny such authority to the "commissioner". While courts often read such variation as plaintiff suggests, we do not think such a reading of our Vehicle Code is appropriate.

Centuries ago Lord Coke enunciated the considerations basic to the accurate interpretation of statutes: (1) What was the state of the law on the same subject when the legislature acted? (2) What was the defect of the then-existing law? (3) What was the objective of the legislature? *Heydon's Case,* 3 Co Rep 7a, 76 Eng Repr 637 (1584). See also *River Wear Commissioners v Adamson,* L R 2 A C 743 (1877). In other words, the courts must consider the circumstances under which legislation was passed, ascertain from those circumstances the intent of the legislature, and give effect to that intent, however clumsily expressed, even if the result is the predominance of intent over strict letter. *Northville Coach Line, Inc v Detroit,* 379 Mich 317, 329–330 (1967).

The objective of Chapter III of the Michigan Vehicle Code is obvious:

"It cannot be questioned that the extensive loss of life on our highways due to the operation of automobiles is a major problem. Nor can it be seriously argued that the problem presents an ever-increasing challenge to the power of government to insure the safety of its citizens. The Legislature of our state is vitally concerned with the driving abilities of motor vehicle operators who are licensed by its delegated authority. The legislative concern does not terminate with the issuance of an operator's license, for it is equally vital that drivers remain fit at all times and whenever they apply for renewal of their license. An indication of the legislative concern has been expressed by the enactment of the Michigan Vehicle Code, and particularly pertinent to this case, the enactment of Chapter III relating to

operator's licenses." *Stanek v Secretary of State,* 33 Mich App 527, 530–531 (1971).

To interpret the Vehicle Code to require the "commissioner" to personally reexamine every driver whose competence to drive can be reasonably questioned and to personally recommend the suspension or revocation of licenses would be in defiance of the obvious purpose of Chapter III of the Code. Michigan has over 5,000,000 licensed drivers residing in 83 counties. Each year approximately 100,000 of those drivers are summoned for reexamination in their home counties. One man cannot possibly do the task. Were the law as plaintiff states it, thousands of drivers, whose competence to operate a motor vehicle can be reasonably questioned, would not be reexamined and thousands of drivers who should not be on the highway would still be driving and endangering others. The courts will not assume that a legislature passed an act that serves no useful purpose, if the act can be interpreted in a way which avoids such a consequence. *Andrews v Wayne County Clerk,* 21 Mich App 568, 574 (1970).

Section 8 of Chapter I of the Michigan Vehicle Code, that chapter which defines the various terms used throughout the code, defines "commissioner" as follows:

" 'Commissioner' means the commissioner of Michigan state police of this state, *acting directly or through his duly authorized officers, agents and employees."* MCLA 257.8; MSA 9.1808 (Emphasis added).

Admittedly, the Commissioner of the Michigan State Police is not also the Director of the Division of Driver and Vehicle Services. However, we construe § 8 to rather clumsily confer upon the Director of the Division of Driver and Vehicle Services

authority to delegate to others the responsibilities conferred upon him by the code, including his responsibilities relative to the suspension and revocation of licenses.

First, the only "commissioner" upon whom the Vehicle Code confers any responsibility is the Director of the Division of Driver and Vehicle Services. Unless the "commissioner" of § 8 of Chapter I is the same "commissioner" of § 203a of Chapter II, the Vehicle Code contains an entire section which has absolutely no meaning.

Second, although the definition of "commissioner" has been altered several times over the years, each change appears to have been intended merely to conform the Vehicle Code to various administrative reorganizations of state government, not to substantively alter the code's grant of authority to the "commissioner" to delegate responsibilities. Originally, the "commissioner" was the Commissioner of Public Safety. 1931 PA 91, § 1(k) and 1939 PA 230, § 1(k). When the duties of the Commissioner of Public Safety were transferred to the Commissioner of the Michigan State Police, the definition of "commissioner" in the Vehicle Code was modified accordingly. 1949 PA 300, § 8. Significantly, however, the authority of the "commissioner" to act "directly or through his duly authorized officers, agents and employees" did not change. The Chapter I definition of "commissioner" has not changed since 1949. However, in 1953, the duties of the Commissioner of the Michigan State Police, insofar as those duties related to the issuance, suspension and revocation of driver's licenses, were transferred to the Director of the newly created Division of Driver and Vehicle Services. 1953 PA 215, § 201 *et seq.;* MCLA 257.201 *et seq.;* MSA 9.1901 *et seq.* Because § 8 of Chapter I

was not repealed in 1953 or subsequently, we hold that the Legislature intended the new "commissioner" to have the same latitude to delegate as had his various predecessors. After all, the number of vehicles and drivers on the highways has increased constantly. We cannot believe that the Legislature intended to restrict the "commissioner" more than he had been in 1931, 1939, and 1949. Therefore, the 1953 amendments to the Vehicle Code, like the amendments of 1939 and 1949, were intended to conform the code to an administrative reorganization, not to substantively alter the code. The failure to amend § 8 was a mere oversight.

Therefore, we construe § 8 of Chapter I to confer upon the Director of the Division of Driver and Vehicle Services, the only "commissioner" upon whom the Michigan Vehicle Code imposes any duties, the authority to act "directly or through his duly authorized officers, agents and employees". Only such a construction can effectuate the purpose of the Legislature, *i.e.,* protecting the public from dangerous drivers, and only such a construction comports with the historical evolution of the Michigan Vehicle Code.

Reversed.

All concurred.