ANDERSON v BROWN BROTHERS, INC.

OPINION OF D. E. HOLBROOK, JR., J.

1. APPEAL AND ERROR—JUDGES—FINDINGS OF FACT—NEGLIGENCE—
   CLEAR ERROR.
   The findings of fact and conclusions of law of a trial judge sitting
   as the trier of fact in a civil action for gross negligence will not
   be overturned on appeal where not clearly erroneous.

2. STATUTES—TORTS—RECREATIONAL PROPERTY—IMMUNITY OF
   OWNER—SPECIFIC USES—SIMILAR USES—SWIMMING AND DIV-
   ING.
   Swimming and diving are activities which are included within
   the recreational property owners immunity statute as similar
   outdoor recreational uses to the other activities specifically
   named (MCLA 300.201).

3. TORTS—STATUTES—MULTIPLE STATUTES—CONSISTENT INTERPRETA-
   TION—STATE OF THE LAW—RECREATIONAL PROPERTY—GOVERN-
   MENTAL IMMUNITY—SUMMARY JUDGMENT.
   It is the duty of the Court of Appeals to read two statutes
   together to reach a consistent result in light of the state of the
   law when the statutes were enacted where both deal with a
   similar subject; therefore, the recreational property owners
   immunity statute, which was passed after a more inclusive
   governmental immunity statute, was not intended by the Legis-
   lature to apply to property owned by municipal corporations
   and used in a governmental function; and where the govern-
   mental immunity statute was subsequently declared unconsti-
   tutional and a tort action arose against a municipal corporation
   landowner before a constitutional immunity statute was ree-
   nacted, an action on the tort was properly brought and it was

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 839.
[2–5, 8, 10, 11] 59 Am Jur 2d, Parks, Squares, and Playgrounds § 38 *et
   seq.*
[6, 7] 58 Am Jur 2d, Nuisances § 141.
[9] 73 Am Jur 2d, Statutes § 122.

error for a trial court to grant summary judgment for the defendant on grounds of immunity.

4. LANDLORD AND TENANT—REAL PROPERTY—STATUTES—RECREATIONAL PROPERTY—IMMUNITY OF OWNER—IMMUNITY OF LESSEE—MUNICIPALITIES.

A tenant or lessee of lands owned and used by a municipality while engaged in a governmental function enjoys no greater protection from the recreational property owners immunity statute than that enjoyed by the municipality.

OPINION OF O'HARA, J.

5. TORTS—IMMUNITY—GOVERNMENTAL IMMUNITY—RECREATIONAL PROPERTY OWNERS IMMUNITY—EXCLUSION—STATUTES.

The governmental immunity statute which gives immunity from ordinary negligence to all governmental agencies should not be interpreted to exclude cities from the specific immunity from ordinary negligence given all landowners under the recreational property owners immunity statute (MCLA 691.1407, MCLA 300.201).

6. NUISANCE—NEGLIGENCE—CONDITION—TORTIOUS CONDUCT—QUESTION OF LAW—QUESTION OF FACT—SUMMARY JUDGMENT—APPEAL AND ERROR.

Nuisance is primarily a condition, and liability is not predicated on tortious conduct through action or inaction on the part of those responsible for the condition; therefore, a properly pleaded action for nuisance was not properly disposed of by a summary judgment as a question of law where under the pleadings a question of fact was raised and the plaintiff was not allowed to put in his proofs.

OPINION OF DANHOF, P. J.

7. PLEADING—LABELS—NATURE OF ALLEGATIONS—SUMMARY JUDGMENT—NUISANCE—NEGLIGENCE—RECREATIONAL PROPERTY OWNERS IMMUNITY.

A court may look behind a label to correctly determine the nature of an allegation; therefore, a trial court properly granted summary judgment for the defendant in an action labeled nuisance but which alleged ordinary negligence where the defendant was immune from suit for negligence under the recreational property owners immunity statute (MCLA 300.201).

8. Statutes—Recreational Property—Immunity of Owners—Intent of Legislature—Codification of Common-Law—Protected Class—Municipalities.

The intent of the Legislature in enacting the recreational property owners immunity statute was to codify the common-law liabilities of the owners of land, and since cities could be held liable in tort as owners of land under the common law, the Legislature intended to include them among the protected class.

9. Statutes—Interpretation—Multiple Statutes—Same Class—Defeating Purpose.

The Legislature may validly enact two statutes that deal with the same class or which have a similar purpose, and one of these statutes should not be read so strictly as to defeat the main purpose of the other.

10. Statutes—Interpretation—Intent of Legislature—Presumptions—Effect of Statutes—Torts—Immunity—Protected Class—Municipalities—Governmental Immunity—Recreational Property Owners Immunity.

In construing a statute it will not be presumed that the Legislature intended to do a useless thing and if possible every part of a statute must be given effect; therefore, as long as a city possesses the characteristics of the class the Legislature sought to protect, where it cannot invoke tort immunity under the governmental immunity statute, it still deserves protection as a landowner under the recreational property owners immunity statute (MCLA 691.1407, MCLA 300.201).

11. Landlord and Tenant—Real Property—Torts—Recreational Property Owners Immunity—Municipalities—Lessees.

A lessee of a municipality which is immune from tort liability under the recreational property owners immunity statute is also immune under the clear wording of the statute (MCLA 300.201).

Appeal from Ingham, Marvin J. Salmon, J. Submitted March 14, 1975, at Lansing. (Docket No. 19023.) Decided November 12, 1975. Leave to appeal applied for.

Complaint by H. C. Anderson for himself and as next friend of Donald J. Anderson against Brown Brothers, Inc., the City of Lansing, Glen T. Cheney, Albert W. Rahfeldt, and Value Builders for

damages resulting from a swimming accident in a stone quarry. Judgment for defendants. Plaintiffs appeal. Reversed in part and remanded.

*Jesse D. Parks (Anderson, Carr, Street & Hornbach,* of counsel) for plaintiffs.

*Foster, Lindemer, Swift & Collins* (by *John L. Collins* and *Michael J. Schmedlen)* for defendant Brown Brothers, Inc.

*George H. Denfield* for the City of Lansing.

Before: DANHOF, P. J., and D. E. HOLBROOK, JR. and O'HARA,* JJ.

D. E. HOLBROOK, JR., J. June 10, 1968, Donald Anderson, aged 14, and a group of friends went swimming in the lake of a gravel pit adjacent to the City of Lansing's Scott Woods Park. When they arrived at the lake there were approximately 50 or 60 people swimming and diving around the lake. They noticed there was a diving board and a raft in the lake. From appearances, they assumed it was part of the park since trails led from the park to the lake and they did not notice any fence or warning signs.

After swimming and diving in one part of the lake for awhile, Donald Anderson and his friends moved to a new area approximately 25 feet away when the area of the lake they were swimming in became crowded. At that point the bank rose approximately 10 feet out of the water. First, they checked the water depth around the bank at which they intended to dive to make sure that it was safe for diving. Discovering that the bottom

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

dropped off sharply about four feet from the bank,
Donald Anderson asked one of his friends to mark
the drop-off by standing at the edge. He then
climbed the bank in preparation for a dive. As he
began his dive the bank crumbled beneath him
causing him to lose the spring in his jump, and he
fell head first into the shallow water.

As a result, Donald Anderson fractured several
vertebrae and is almost totally paralyzed from the
neck down. He suffers nearly constant physical
distress but with the assistance of his family and
friends he has been able to attend some college
classes although he is virtually helpless as far as
taking care of his personal needs.

Construction of the lake began in 1966 when
Cheney and Rahfeldt, then owners of the property
in question, contracted with Brown Brothers for
the removal of gravel. The City of Lansing sought
an injunction claiming injury to a public street. By
a court order dated December 6, 1966, Cheney and
Rahfeldt conveyed the property to the city. The
order granted Cheney and Rahfeldt the right to
contract for the removal of gravel from the prop-
erty and to create a man-made lake for the City of
Lansing within five years. Paragraph 8 of that
order provided:

"IT IS FURTHER ORDERED, that Glen T. Cheney
and Albert W. Rahfeldt and their contractor shall erect
and maintain a farm type fence of a type to make
climbing difficult around the excavation and to erect a
gate, all under specifications determined by the Parks
Department of the City of Lansing. This fence shall be
completed and installed before excavation is done below
water level at any point or any water collects in any
excavated point on the property."

The fence was erected but according to testi-

mony, by June, 1968, the fence had broken down. There was also testimony that the gate was not always kept closed, even when there was no excavation work being done. Neighbors testified that they had complained to all the defendants concerning the use of the lake as a swimming area. However, no remedial action was taken before the accident.

The plaintiffs filed a three count complaint against the defendants. Count one alleged nuisance; count two alleged gross negligence or wilful and wanton misconduct; and count three alleged simple negligence. The City of Lansing and Brown Brothers, Inc., moved for summary judgment on counts one and three on the authority of MCLA 300.201; MSA 13.1485.[1] The City of Lansing also moved for summary judgment on count two on the grounds of governmental immunity. The trial court granted the motion on counts one and three as to all defendants, but denied the City of Lansing's motion for summary judgment on count two because of *Maki v East Tawas,* 18 Mich App 109; 170 NW2d 530 (1969), *affirmed,* 385 Mich 151; 188 NW2d 593 (1971).

The parties proceeded to trial on the gross negligence or wilful and wanton misconduct count in September, 1973, after waiving jury trial. At the close of plaintiff's proofs the trial court granted defendants' motion for a judgment of no cause of action on count two. The trial court found no

---

[1] MCLA 300.201; MSA 13.1485 provided before a 1974 amendment: "No cause of action shall arise for injuries to any person who is on the lands of another without paying to such other person a valuable consideration for the purpose of fishing, hunting, trapping, camping, hiking, sightseeing, or *other similar outdoor recreational use,* with or without permission, against the *owner, tenant, or lessee* of said premises unless the injuries were caused by the gross negligence or wilful and wanton misconduct of the owner, tenant, or lessee." (Emphasis supplied.)

evidence of gross negligence or wilful and wanton misconduct. It concluded that defendants were not required to foresee that Donald Anderson would attempt to dive off a bank that would crumble underneath him. It also found that failure by the defendants to keep others out of the gravel pit was not so reckless as to constitute wilful and wanton misconduct. Plaintiffs appeal as of right.

Plaintiffs argue that the trial court erred in granting defendants' motion for summary judgment on the basis of MCLA 300.201; MSA 13.1485, as the statute was not intended to apply to this type of case. Alternatively, plaintiffs argue that the statute is unconstitutional as a violation of due process, equal protection, and article 4, § 24 of the Michigan Constitution. Given our disposition of the first issue we do not reach this issue.

Plaintiffs also argue that the trial court erred in awarding defendants a judgment of no cause of action on the gross negligence count. From my review of the record, however, I cannot say that the trial judge's findings of fact and conclusions of law were clearly erroneous. I therefore would affirm the judgment of no cause of action on the gross negligence count. GCR 1963, 517.1. *Ruemenapp v National Food Stores, Inc,* 385 Mich 648; 189 NW2d 330 (1971).

I.

Plaintiffs first argue that they are not within the recreational property owners immunity statute, MCLA 300.201; MSA 13.1485, as the acts that caused the injury, *i.e.,* diving and swimming, are not within the statute. In *Taylor v Mathews,* 40 Mich App 74; 198 NW2d 843 (1972), it was merely assumed that diving was within the statute since they affirmed the trial court's application of the

statute. The trial court, however, in its opinion granting the motions for summary judgment in the present case, very logically stated the reason for including "swimming" and "diving" within the words "similar outdoor recreational use".

"It is the opinion of this court that swimming is the type of recreation that is a natural extension of many of the activities specifically enumerated in the statute and, in the absence of any reason to the contrary, should fall into the category of a 'similar outdoor recreational' activity. To construe the statute otherwise would be to say that a man who wades out in another's lake to fish has no cause of action for injuries, but he is not barred from suit if he changes his mind and goes swimming, and is injured. Equally untenable would be to bar from recovery a person who sustains injuries while he is merely sightseeing or hiking across the land of another and yet to allow the same trespasser to get into court if he should, in the course of his hike, pause for a swim, or if he should purposely go onto Defendants' property and go swimming, and sustain injuries." (Citation omitted.)

However, to say that the activity of Donald Anderson is within the statute does not necessarily make the statute applicable. Defendants also must come within the statute.

II.

It is undisputed that the City of Lansing is the legal owner of the land on which the gravel pit is located. While MCLA 691.1407; MSA 3.996(107) (1964 PA 170, § 7), gave the City of Lansing complete immunity from its negligence in governmental functions, such was declared unconstitutional

in *Maki v East Tawas, supra,* because of a violation of article 4, § 24, of the Michigan Constitution.[2]

Because *Maki v East Tawas, supra,* eliminated the defense of governmental immunity, the City of Lansing must rely on the recreational property owners immunity statute. Because both statutes deal with a similar subject matter, *i.e.,* immunity from tort liability, it is the duty of this Court to read these two statutes together to reach a consistent result. *Rathbun v Michigan,* 284 Mich 521, 545; 280 NW 35 (1938), *People v Martin,* 59 Mich App 471; 229 NW2d 809 (1975). In reading statutes together, as a general rule, it is necessary to look at the state of the law when the second statute was enacted. *Lakehead Pipeline Co v Dehn,* 340 Mich 25, 134; 64 NW2d 903 (1954), *Brown v Department of State,* 45 Mich App 322, 325; 206 NW2d 481 (1973). However, in this case it is necessary to look to the state of the law when the first statute was passed since the second statute, the governmental immunity statute, was enacted as a response to the overruling of common law governmental immunity.[3] See *Brown v Department of State, supra.*

When the recreational property owners immunity statute was passed in 1953, there was still common law immunity for municipal corporations from tort liability. *Williams v Detroit,* 364 Mich 231; 111 NW2d 1 (1961). Although the doctrine

---

[2] A valid governmental immunity statute was enacted in 1970. This does not affect the outcome of this litigation however. *Campbell v Detroit,* 51 Mich App 34; 214 NW2d 337 (1973).

[3] While *Williams v Detroit, supra,* voided common law governmental immunity, it did state that the Legislature had the right to enact an immunity statute. This the Legislature did with 1964 PA 170. The amendment to the recreational property owners immunity statute was 1964 PA 199. *Donellon v County of Wayne,* 2 Mich App 576, 579, n 2; 141 NW2d 387 (1966).

was under attack at the time in academic[4] and judicial[5] circles, the doctrine had continued vitality in 1953. *Martinson v Alpena,* 328 Mich 595; 44 NW2d 148 (1950).

It is also a rule of statutory construction that this Court will not presume that the Legislature intended to do a useless act. *Klopfenstein v Rohlfing,* 356 Mich 197, 202; 96 NW2d 782 (1959), *Davis v Imlay Township Board,* 7 Mich App 231, 236; 151 NW2d 370 (1967). The recreational property owners immunity statute grants an exception for gross negligence or wilful and wanton misconduct. However, both the common law and the governmental immunity statute recognize no exceptions as regards outdoor recreational areas. Because governmental immunity is more inclusive than the recreational property owners immunity we hold that the Legislature intended that only governmental immunity apply to property owned by a municipal corporation used in a governmental function.[6]

Shortly before the Legislature amended the recreational property owners immunity statute to put it in the form that is relevant to this case, the Legislature enacted the 1964 governmental immu-

---

[4] Smith, *Municipal Tort Liability,* 48 Mich L Rev 41 (1949), Seasongood, *Municipal Corporations: Objections to the Governmental or Proprietary Tests,* 22 Va L Rev 910 (1936), *see,* Anderson, *Claims Against States,* 7 Vand L Rev 234 (1954), Synposium, *Governmental Tort Liability,* 9 Law & Contemp Prob 179–370 (1942), Borchard, *Governmental Responsibility in Tort,* 36 Yale L J 1039 (1927).

[5] Although judges had not in 1953 made a frontal assault on governmental immunity, the proprietary-governmental function dichotomy, was in full flower. Judges tended to stretch definition of what a proprietary function was in order to allow defendants to recover. *Accord, Matthews v Detroit,* 291 Mich 161; 289 NW 115 (1939).

[6] I do not express an opinion on whether the Legislature intended MCLA 300.201; MSA 13.1485 to apply when a municipal corporation is a defendant over land on which it is exercising a proprietary function.

nity statute. Thus at both times before this case
arose that the Legislature considered the recrea-
tional property owners immunity statute there
was governmental immunity. The Legislature did
not consider the recreational property owners im-
munity statute as a back-up for governmental
immunity. In 1953 the common law rule of govern-
mental immunity was still alive and in 1964 there
was a new statute on the subject. It was not within
the power of the Legislature to foresee the 1969
and 1971 *Maki v East Tawas, supra,* decisions
holding the governmental immunity law unconsti-
tutional since it is presumed that the Legislature
passes only constitutional acts. *Clarence Township
v Dickinson,* 151 Mich 270, 272; 115 NW 57 (1908).
It is a mere fortuity that the City of Lansing
cannot invoke governmental immunity in this
case.

## III.

Since the recreational property owners immu-
nity statute was not designed or intended to apply
to lands of a municipality while the municipality
is engaged in a governmental function I conceive
no valid reason why a tenant or lessee of lands
owned by a municipality should enjoy any greater
benefits from the statute than those enjoyed by the
municipality.

Hence, I would hold that a tenant or lessee of
lands owned and used by a municipality while
engaged in a governmental function enjoys no
greater protection from the recreational property
owners immunity statute than that enjoyed by the
municipality, which is none.

It therefore becomes unnecessary to determine
whether the remaining parties defendant are in
fact tenants or lessees since, under the circum-

stances, they do not fall within the protection afforded by the statute. The court therefore erred in granting summary judgment on the nuisance and negligence counts as to all defendants. .

I would affirm in part and reverse in part. I would remand for trial on plaintiffs' counts one and three as to all defendants. I vote to award no costs since neither plaintiffs or defendants have prevailed in full. Further, a public question and interpretation of a statute are involved.

OPINION OF O'HARA, J.

O'HARA, J. *(concurring in part)*. I agree with Judge DANHOF that the trial court properly disposed of count three based on ordinary negligence by entry of summary judgment.

I also agree with both my colleagues that the finding of the trial judge that neither gross negligence nor wilful and wanton misconduct, pleaded in count two, was established was not clearly erroneous and is not to be disturbed by us.

I do not agree with Judge DANHOF in his proposed disposition of count one alleging nuisance.

First, I think it does plead an actionable nuisance and is not merely so labeled.

Granted the nuances of definition of the term "nuisance", its categories and subcategories, I stand by what this Court's majority said in *In re Woods Estate,* 49 Mich App 412, 416; 212 NW2d 240 (1973), *lv den* 391 Mich 759 (1974).

"In essence it [the difference] seems to be the hypothetical 'minds of reasonable men cannot differ' test that will determine whether the kind of nuisance under the adduced facts is a question of fact or law."

True the *Woods* case, *supra,* is inapposite to a

degree because in *Woods* the question was whether the nuisance, if established, would vitiate the defense of contributory negligence.

Nonetheless the test for determining the type stands undisturbed by our Supreme Court. Given this premise plaintiff should have been allowed to put in his proofs on that theory. The issue should not have been disposed of by summary judgment.

I feel fortified in this conclusion by the language of the distinguished late Chief Justice CARR in *Bluemer v Saginaw Central Oil & Gas Service,* 356 Mich 399; 97 NW2d 90 (1959). In that case, writing for a unanimous Court, Mr. Justice CARR quoted with approval from 66 CJS, Nuisances, § 3, pp 733–734:

"The number of nuisances *per se* is necessarily limited, and by far the greater number of nuisances are nuisances *per accidens. For this reason whether or not a particular thing or act is a nuisance is generally a question of fact".* 356 Mich at 411. (Emphasis supplied.)

If in this state a pleaded nuisance is indistinguishable from an action based upon gross negligence or wilful and wanton misconduct, I am unaware of it. If it is true, it should be said so with judicial clarity and finality. It seems to me the Supreme Court has said there is a difference as succinctly as possible in *Buckeye Union Fire Insurance Co v Michigan,* 383 Mich 630, 636; 178 NW2d 476 (1970), as quoted by the very recent case of *Buddy v Michigan,* 59 Mich App 598, 603; 229 NW2d 865 (1975).

"Primarily, nuisance is a condition. Liability is not predicated on tortious conduct through action or inaction on the part of those responsible for the condition.

Nuisance may result from want of due care (like a hole in a highway), but may still exist as a dangerous, offensive, or hazardous condition even with the best of care."

I vote to vacate the summary judgment entered in favor of all the defendants on count one alleging a nuisance and to remand this issue to the trial court for such proceedings as may there properly ensue.

I vote to award no costs; no party having prevailed in full.

Danhof, P. J. *(dissenting in part, concurring in part)*. Judge Holbrook has accurately stated the facts in his opinion and I concur in his affirmance of the trial court's decision granting defendants' motion for judgment of no cause of action on count two. Count one of the complaint in the instant case is labeled nuisance, and count three alleges ordinary negligence. The trial court granted the defendants' motion for summary judgment as to counts one and three, and for the reasons hereinafter stated this decision should be affirmed.

Count one is labeled nuisance. However, a court may look behind the label to correctly determine the nature of the allegation. *Young v Groenendal,* 382 Mich 456, 462; 169 NW2d 920 (1969). Count one alleges certain failures by the defendants in their maintenance of the lake which proximately caused the plaintiff's injuries. Such failures do not constitute a nuisance as they relate to plaintiff's injuries, but rather may be deemed to be allegations of negligence. See *Williams v Primary School District No 3, Green Township,* 3 Mich App 468; 142 NW2d 894 (1966).

The Supreme Court in *Thomas v Consumers Power Co,* 394 Mich 459, 460; 231 NW2d 653

(1975), accepted the Court of Appeals construction of MCLA 300.201; MSA 13.1485 in *Thomas v Consumers Power Co,* 58 Mich App 486; 228 NW2d 786 (1975). In discussing the above statute, the Court of Appeals there said, 58 Mich App 486, 492:

"[T]his statute does not change the common-law duty of owners and occupiers of property owed to those who come upon such property as mere licensees, as were the plaintiffs in this case. The act is merely a codification of tort principles which are universally recognized in common-law jurisdictions.

" 'A licensee, as distinguished from an invitee, is one who enters another's land because a personal benefit will be derived by so doing; and while there his presence is merely tolerated.' *Cox v Hayes,* 34 Mich App 527; 192 NW2d 68 (1971).

"The act in question has the undoubted purpose of furthering recreational activities in Michigan by making certain areas available for such purposes while clearly restating the common-law liability of owners to those who come gratuitously upon their land. Under these circumstances and to carry out the undoubted intention of the Legislature, it would seem the statute should be liberally construed. Courts should lean toward that construction which will give the statute force and validity, not to that construction which would nullify it. *Thomas Canning Co v Southern Pacific Co,* 219 Mich 388, 400; 189 NW 210 (1922), *Pigorsh v Fahner,* 386 Mich 508, 514; 194 NW2d 343 (1972). The statute neither restricts nor adds to the common-law rights of the plaintiffs."

Where not otherwise immune, a city has been held liable as an individual possessor of land under the duties imposed by the common-law. See for example *Carlisi v City of Marysville,* 373 Mich 198; 128 NW2d 477 (1964). The Legislature intended to codify the common-law liabilities of the owners of land. Cities could be held liable as owners of land under the common law. Therefore, the Legislature

intended to include cities among the class of owners of land when it enacted MCLA 300.201; MSA 13.1485.

The Legislature may validly enact two statutes that deal with the same class or which have a similar purpose. *Detroit v Michigan Bell Telephone Co,* 374 Mich 543; 132 NW2d 660 (1965). One statute should not be read so strictly as to defeat the main purpose of the other statute. *Detroit v Michigan Bell Telephone Co, supra,* at 560. Further, *Klopfenstein v Rohlfing,* 356 Mich 197, 202; 96 NW2d 782 (1959) stated:

" 'It is a familiar rule of construction that it will not be presumed that the Legislature intended to do a useless thing and that if possible every part of a statute must be given effect.' "

As applicable here, the latter portion of the rule should state that if possible each statute must be given effect.

Based upon the aforementioned principles, the enactment of MCLA 691.1407; MSA 3.996(107), which gives immunity from ordinary negligence to all governmental agencies, should not be interpreted to exclude cities from the specific immunity from ordinary negligence given all landowners under MCLA 300.201; MSA 13.1485. The two statutes are not in conflict. Rather, each seeks to protect a certain class from liability for ordinary negligence. As long as a city possesses the characteristics of the class the Legislature sought to protect, the city is entitled to immunity under either statute. Where a city cannot invoke immunity under MCLA 691.1407; MSA 3.996(107), it still deserves protection as a landowner under MCLA 300.201; MSA 13.1485. It is precisely this latter situation that reinforces the rule that it will

not be presumed the Legislature intended to do a useless thing.

The plaintiffs have alleged for the first time that MCLA 300.201; MSA 13.1485 is unconstitutional for a number of reasons. This Court does not consider such allegations when raised for the first time on appeal, however, this issue has been decided adversely to the plaintiffs in *Thomas v Consumers Power Co, supra.*

The defendant City of Lansing is immune from the plaintiffs' suit under counts one and three. As lessees, the other defendants are also immune under the clear wording of MCLA 300.201; MSA 13.1485.

Affirmed, costs to the defendants.