MANVILLE v BOARD OF GOVERNORS OF WAYNE STATE
UNIVERSITY

Docket No. 77-3744. Submitted June 14, 1978, at Lansing.—Decided
September 19, 1978.

Daniel E. Manville brought an action against the Board of
Governors of Wayne State University seeking a higher rate of
compensation under the Michigan Minimum Wage Law. Plain-
tiff, a prison inmate, was employed as a clerk for the universi-
ty's educational program at Jackson prison. While thus em-
ployed he received the standard hourly wage set forth in the
prison regulations. Plaintiff claims that he is entitled to be paid
a higher rate under the Minimum Wage Law because he was
an employee of an institution other than the prison. The Court
of Claims, Thomas C. Megargle, J., granted summary judgment
to defendant after determining that plaintiff had failed to state
a claim upon which relief could be granted. Plaintiff appeals.
*Held:*

Plaintiff was an employee of the prison, not the university.
His services, as a prison inmate, were performed entirely
within the prison walls for the benefit of the prison and its
rehabilitation program; therefore, they were within the scope of
the Correctional Industries Act, and it is this act and not the
Minimum Wage Law which governs plaintiff's rate of compen-
sation.

Affirmed.

1. Judgment—Summary Judgment—Failure to State Claim—Test—
Court Rules.

The test of a motion for summary judgment on the grounds that
a complaint fails to state a claim upon which relief can be

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 73 Am Jur 2d, Summary Judgment § 26.
[4] 60 Am Jur 2d, Penal and Correctional Institutions § 38.
[5, 7, 11] 37 Am Jur 2d, Penal and Correctional Institutions § 37.
[6] 37 Am Jur 2d, Penal and Correctional Institutions § 36.
[8, 10] 73 Am Jur 2d, Statutes § 254.
[9] 73 Am Jur 2d, Statutes § 258.

granted is whether a plaintiff's claim, on the pleadings, is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery (GCR 1963, 117.2[1]).

2. Judgment—Summary Judgment—Pleadings.

All well pleaded allegations in a plaintiff's complaint must be taken as true when considering a motion by plaintiff for summary judgment and if those allegations state a cause of action, a defendant's motion for summary judgment must be denied.

3. Judgment—Summary Judgment—Pleadings.

A trial court, when considering the merits of a motion for summary judgment for failure to state a cause of action, must accept as true the well pleaded facts contained in the pleadings.

4. Convicts—Prison Inmates—Prison Employment—Minimum Wage.

A prison inmate is not entitled to a minimum wage under the Minimum Wage Law if he is employed by a prison.

5. Convicts—Prison Inmates—Employment—Economic Reality Test.

Determination of whether a prison inmate is employed by the prison or by some institution outside of the prison depends upon economic reality; the economic reality test considers such indicia of control over an inmate's labor as who has the ability to hire and fire the inmate, who sets his work hours and pays his wages, and who supervises the inmate's work performance.

6. Convicts—Prison Inmates—Corrections Commission—Correctional Industries Act—Employment—Rehabilitation—Public Policy—Statutes.

The Corrections Commission, under the Correctional Industries Act, is authorized to provide as fully as practicable for the employment of prison inmates in tasks consistent with the penal rehabilitative purposes of their imprisonment and with public policy (MCL 800.327; MSA 28.1540[7]).

7. Convicts—Prison Inmates—Employment—Correctional Industries Act—Minimum Wage Law.

The services of a prison inmate, performed entirely within the prison walls for the benefit of the prison and its rehabilitation program, are within the scope of the Correctional Industries Act; therefore, it is the Correctional Industries Act and not the Minimum Wage Law which controls the inmate's rate of compensation.

8. Statutes—Same Subject Matter—Reasonable Construction—Enforcement.

It is the duty of the courts, where two statutes arguably cover the same subject matter, to reconcile and enforce both statutes, if by reasonable construction the purpose of each can be served.

9. Courts—Statutes—Legislature—Interpretation—Useful Purpose.

Courts will not assume that the Legislature passed an act that serves no useful purpose if the act can be interpreted in a manner that avoids such a consequence.

10. Statutes—Statutory Construction—Conflicting Statutes—Specific Statute—General Statute.

It is a rule of statutory construction that where two statutes are or appear to be in conflict, a specific statute, enacted subsequent to a more general statute, prevails.

11. Convicts—Prison Inmates—Employment—Prison Authorities. The regulation of inmate employment is a matter over which prison authorities retain constant control.

Daniel E. Manville, *in propria persona,* for plaintiff.

*Elmer L. Roller* and *Sharon R. Stack,* for defendant.

Before: D. E. Holbrook, P. J., and M. J. Kelly and P. J. Marutiak,* JJ.

P. J. Marutiak, J. Plaintiff appeals of right an order of the Court of Claims granting defendant's motion for summary judgment based upon plaintiff's failure to state a cause of action upon which relief could be granted. GCR 1963, 117.2(1).

From November 1, 1974, to April 15, 1975, plaintiff was employed by defendant as a clerk for defendant's educational program at Jackson Prison. At all times during the period of this employment, plaintiff was an inmate at the prison. While employed by defendant, plaintiff received

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the standard hourly wage that is set forth in prison regulations. Plaintiff contends, however, that he was entitled under the Michigan Minimum Wage Law to a somewhat higher rate of compensation. MCL 408.381 *et seq.;* MSA 17.255(1) *et seq.* Hence the present action.

The Court of Claims granted summary judgment after determining that plaintiff had failed to state a claim upon which relief could be granted. GCR 1963, 117.2(1). The test to be applied in deciding a summary judgment motion based upon this ground is whether the claim, on the pleadings, is so clearly unenforceable as a matter of law that no factual development could possibly justify a right to recovery. *Paige v Bing Construction Co,* 61 Mich App 480; 233 NW2d 46 (1975). All well pleaded allegations in a plaintiff's complaint must be taken as true and, if those allegations state a cause of action, a defendant's motion for summary judgment must be denied. *Blurton v Bloomfield Hills Board of Education,* 60 Mich App 741; 231 NW2d 535 (1975). A lower court, when considering the merits of a summary judgment motion for failure to state a cause of action, must accept as true the well pleaded facts contained within the pleadings. *Lincoln Park Detention Officers v Lincoln Park,* 76 Mich App 358; 256 NW2d 593 (1977), *Stewart v Troutt,* 73 Mich App 378; 251 NW2d 594 (1977).

The question of whether prison inmates must be given the minimum wage when working for institutions other than the prison, is one of first impression in the courts of this state. It is undisputed that an inmate is not entitled to the minimum wage if employed by the prison. This stems from the fact that inmates have no right to the fruit of their labor when working for a prison, because the labor of inmates belongs to the state. *Sims v Parke*

*Davis & Co,* 334 F Supp 774, 791 (ED Mich, 1971), *aff'd* 453 F2d 1259 (CA 6, 1972). Accord, *Huntley v Gunn Furniture Co,* 79 F Supp 110, 113 (WD Mich 1948).

The thrust of plaintiff's argument on appeal is that he was an employee of an institution other than the prison and that he, therefore, and not the state, was entitled to the value of his labor. This argument is premised upon application of the "economic reality test" to this case. Under the economic reality test, which was adopted in *Sims, supra,* an inmate's employment situation is examined to determine whether the prison or the outside institution is the inmate's employer. The economic reality test considers such indicia of control over an inmate's labor as who has the ability to hire and fire the inmate, who sets his work hours and pays his wages, and who supervises the inmate's work performance.

The pleadings of plaintiff are sufficient to state a cause of action under the economic reality test. Plaintiff alleged that he was an employee of defendant and that he was hired, supervised, paid and fired by an agent acting on behalf of defendant. He further asserted in his complaint that no prison official participated in his selection for the job, that defendant and not the prison set his work hours, and that his pay did not go through the prison payroll system but, rather, came directly from defendant.[1] However, for reasons that shall be discussed *seriatim,* we affirm the grant of sum-

---

[1] These allegations of plaintiff were denied in the pleadings of defendant and in two affidavits submitted by defendant in support of its motion for summary judgment. The first of these affidavits was by Mr. Bray. Mr. Bray assumed the position of program coordinator for defendant and the prison two months after plaintiff's employment had been terminated. He states that due to his position, he was familiar with the rules and regulations of the prison and that plaintiff's employment situation was controlled by the prison and not defendant. However, because he was not involved with the prison at the time that plaintiff allegedly worked for the university he cannot

mary judgment and hold that plaintiff was not entitled to receive the minimum wage.

The Michigan Minimum Wage Law defines the terms "employee", "employer" and "employ" in a manner that would seem to make the act applicable to the case at bar.[2] Further, the act does not list state prisons or prisoners in that section which specifically enumerates the employers and employees that are excluded from coverage under it. MCL 408.394; MSA 17.255(14). However, to hold that plaintiff is hereby entitled to the minimum wage, we would be required to contravene the clear intent of the Legislature in the Correctional Industries Act.[3]

state from personal knowledge what transpired between plaintiff, defendant and the prison. Therefore, his affidavit would be invalid. GCR 1963, 116.4. The second affidavit accompanying defendant's motion for summary judgment was by Mr. Smythe, the Executive Director of employee relations for defendant. In this affidavit, the affiant states that plaintiff was under the direct and exclusive control of the prison during the term of his employment. Plaintiff argues on appeal that the assertions of fact in these affidavits were contradicted by his own affidavit and, therefore, it was improper for the Court of Claims to grant an order of summary judgment because a genuine issue of material fact did exist in this case. GCR 1963, 117.2(3). However, because the order of summary judgment was not based upon this subsection of the court rule, but, rather on GCR 1963, 117.2(1), plaintiff's argument on appeal is spurious. A motion for summary judgment based upon the failure to state a cause of action tests the legal sufficiency of pleadings. The existence of a genuine issue of material fact is irrelevant. *Grasser v Fleming,* 74 Mich App 338; 253 NW2d 757 (1977). *Accord, Trombetta v Detroit, Toledo & Ironton R Co,* 81 Mich App 489; 265 NW2d 385 (1978).

[2] These terms are defined in the following manner in the subsections of MCL 408.382; MSA 17.255(2):

"(b) 'Employee' means an individual between the ages of 18 and 65 years employed by an employer on the premises of the employer or at a fixed site designated by the employer * * * .

"(c) 'Employer' means any person, firm, or corporation, including the state and its political subdivisions, agencies and instrumentalities, and any person acting in the interest of such employer, who employs 4 or more employees at one time within any calendar year. Such employer shall be subject to this act during the remainder of such calendar year.

"(d) 'Employ' means to engage, suffer, or permit to work."

[3] MCL 800.321 *et seq.;* MSA 28.1540(1) *et seq.*

Under the Correctional Industries Act, which was promulgated to provide for the employment of inmate labor in correctional institutions of this state, the Corrections Commission is authorized to "provide as fully as practicable for the employment of inmates in tasks consistent with the penal and rehabilitative purposes of their imprisonment and with the public economy". MCL 800.327; MSA 28.1540(7). The act lists, in order of their preferred priority, several types of employment that should be accorded inmates. *Id.* The most preferred categories of employment consist of, in the language of the act:

"(a) Routine, maintenance and constructive activities contributing to the conduct of the several institutions in a manner most favorable to their correctional and rehabilitative purposes and to the minimum costs to the state.

"(b) *Educational and rehabilitation activities, whether formal or through productive or socialized activities, determined on the basis of individual needs and educability." Id.* (Emphasis added.)

With respect to the amount of compensation to be paid to inmates employed under it, the Correctional Industries Act provides:

"The corrections commission may adopt a schedule of payments or allowances to inmates or their dependents from such funds as may be provided therefor, but such payments shall be made on the basis of need or of motivation or of reward for industry or behavior and shall not be related to profits to the state from the activities to which the prisoners may be assigned." MCL 800.332; MSA 28.1540(12).

Looking at the case at bar, we hold that the services provided by plaintiff to defendant were

within the scope of the Correctional Industries Act.[4] They were performed entirely within the prison walls and for the benefit of the prison and its rehabilitation program.[5] Exhibits that accompanied plaintiff's pleadings in this case show that defendant's educational program was conducted at the prison under the direction of the Corrections Commission. Under the authority of the commission, the Department of Corrections discussed the implementation of the work-educational program with defendant, but it was the department that unilaterally set the wage scale and work hours for the inmate employees and designated those inmates who would be permitted to participate in the program. Thus, defendant was employed under the terms of the Correctional Industries Act and it is this act, and not the Minimum Wage Law, that must control the rate of his compensation. This result follows from the application of general rules of statutory construction to this case.

Where, by reasonable construction, two statutes can be reconciled and the purpose of each can be served, it is the duty of the courts to reconcile and enforce them. *People v Buckley,* 302 Mich 12; 4 NW2d 448 (1942). Courts will not assume that the Legislature passed an act that serves no useful purpose, if the act can be interpreted in a manner that avoids such a consequence. *Brown v Dep't of State,* 45 Mich App 322; 206 NW2d 481 (1973), *lv den* 389 Mich 802 (1973). Were we to follow the logic of plaintiff, and apply it in this case, we would be forced to either ignore or nullify the provisions of the Correctional Industries Act that empower the Corrections Commission to provide for a payment schedule for inmate labor.

---

[4] MCL 800.322; MSA 28.1540(2).

[5] *Id.* MCL 800.326; MSA 28.1540(6), MCL 800.327(a)(b); MSA 28.1540(7)(a)(b).

It appears that when the Legislature passed the Minimum Wage Law, it did not expressly consider the problem of inmate wages. However, when it explicitly examined this area in the Correctional Industries Act, it decided to leave the determination of wages to the Corrections Commission. It is a rule of statutory interpretation that where two statutes are or appear to be in conflict, the more specific statute, enacted subsequent to the more general one, will prevail. *People v McFadden,* 73 Mich App 232; 251 NW2d 297 (1977).

The facts of this case fit neatly into these rules of statutory construction. The Minimum Wage Law is general in scope and deals with the wages of many groups of employees. The Correctional Industries Act, however, is particular in scope with provisions that specifically bear upon the payment of inmate wages. Further, the Correctional Industries Act is the more recently enacted of these two statutes.

Thus, we hold that the legislative intent is that plaintiff be paid wages in accordance with regulations promulgated under the Correctional Industries Act and not the Minimum Wage Law. We believe this result to more accurately reflect the reality of prison employment. The regulation of inmate employment is a matter over which prison authorities retain constant control.[6] Because of the unique situation of prison employment, it is likely that inmate employees were never intended to be given the protection afforded the general population under the Minimum Wage Law.[7] *Sims, supra,*

---

[6] *See* MCL 800.326; MSA 28.1540(6).

[7] Our opinion concerns only those inmate employees who are employed within the prison walls and whose employment is covered under the Correctional Industries Act. Certain prisoner employees, such as those who are employed in a work-pass program in local communities, are entitled to the minimum or prevailing wage for similar employment in that locality. MCL 791.265a; MSA 28.2325(1);

stopped short of holding this, but it did indicate that this proposition was probably correct.[8] Moreover, with respect to the Federal minimum wage law, the Federal wage and hour administrator has adopted this approach.[9]

In conclusion, we note that plaintiff was in no manner employed by a private industry and, therefore, application of the economic reality test would serve no purpose here. Plaintiff's employment related to the operation of a university behind prison walls for the benefit of the prison and a prison rehabilitation program. As was previously stated, the state has the right to the fruits of an inmate's labor for the state and need not pay the minimum wage for it. Like the Department of Corrections, defendant is an agency of the state.[10] Thus, even were we to grant plaintiff's argument that defendant was his employer under the economic reality test, plaintiff, nevertheless, would not have stated a cause of action for payment of wages in accordance with the Minimum Wage Law.

---

Michigan Department of Corrections policy directive DWA-41.01 (April 20, 1974).

[8] "Moreover, we do not think that Congress intended the Fair Labor Standards Act to cover the present situation. The setting of wages for incarcerated prisoners working on assignment by prison officials requires the consideration of many variables which are unique to that situation and which directly affect government policy on rehabilitation of criminals. It is unlikely that Congress considered any of those variables at the time it adopted general legislation designed to give employees the right to a subsistence wage." *Sims, supra,* at 787.

[9] "In order for the Act [Fair Labor Standards Act, 29 USC § 201 *et seq.;* as amended] to apply, there must be an employer-employee relationship. Generally, an inmate in a State prison who, while serving a sentence, is required to work by or does work for the prison or another element of the State government (such as a State university) is not an employee within the meaning of the Act." Opinion WH 346, signed by Acting Wage-Hour Administrator Warren D. Landis, July 10, 1975; 6 BNA Labor Relations Reporter, Wages and Hours Manual, 91:457.

[10] Const 1963, art 8, § 4.

Accordingly, we hold that plaintiff failed to state a cause of action and that it was not error for the Court of Claims to grant defendant's motion for summary judgment.

Affirmed. No costs, a public question involved.