## MATTHEWS v. CITY OF DETROIT.

MUNICIPAL CORPORATIONS—MINIATURE RAILROAD AT A PARK—NEGLIGENCE—EQUALLY DIVIDED COURT.

Judgment for plaintiff in her action against city for injuries she sustained as result of negligence of city's employees in the operation of a miniature railroad, operated at a profit in a zoological park, is affirmed by an equally divided court.

Appeal from Wayne; Campbell (Allan), J. Submitted June 15, 1939. (Docket No. 102, Calendar No. 40,567.) Decided December 19, 1939.

Case by Kate Matthews against City of Detroit, a municipal corporation, for damages for personal injuries sustained while alighting from a miniature train in a city zoological park. Verdict and judgment for plaintiff. Defendant appeals. Affirmed by an equally divided court.

*Dennis H. Dwyer* and *Frank M. Powers* (*Calvin C. Bigelow,* of counsel), for plaintiff.

*James R. Walsh,* Assistant Corporation Counsel (*Raymond J. Kelly,* Corporation Counsel, of counsel), for defendant.

McALLISTER, J. By authority of its charter, the city of Detroit maintains a zoological park. Within the park, the city operates a miniature railroad, used to transport visitors to the various points of interest. Admission to the park is free, but the fare on the miniature railroad is five cents. The maintenance of the park is an expense to the city, but the operation of the railroad is profitable, although such profit is offset by the larger expense of maintaining the park.

Plaintiff, a visitor to the park, boarded the train, after paying her fare, and was transported to one of the exhibits within the grounds. The train stopped, and as plaintiff was stepping off the car, the engine jerked, and plaintiff was thrown to the platform and severely injured. Plaintiff sued the city for negligence and had verdict from a jury on which judgment was entered. Defendant appeals,

claiming that plaintiff did not sustain the burden of proof necessary to establish her case, that the court should have directed a verdict on the ground that plaintiff did not answer material allegations in defendant's answer, which must be held to be admitted, and that the city is not liable for negligence because, at the time of the accident, it was operating the railroad in a governmental capacity.

The testimony was in conflict. If the jury believed the plaintiff, the accident was the result of negligence of the employee of the city in charge of the engine. The jury is the judge of the credibility of the witnesses, and unless its verdict is against the weight of the evidence, it will not be disturbed on review. There was evidence to sustain the verdict.

We are of the opinion that there is no merit as to the claim of error in the failure of the court to direct a verdict on the ground that plaintiff did not deny material allegations in defendant's answer, which therefore must be considered as admitted and entitling defendant to a verdict. No motion to direct a verdict was made upon these grounds. There was evidence upon which the case could go to the jury. The claim now asserted was not presented to the trial court and therefore cannot be raised on review.

With regard to the liability for negligence of its employee, a similar question arose before this court in *Foss* v. *City of Lansing*, 237 Mich. 633 (52 A. L. R. 185). There, the municipality was operating trucks in the collection of garbage. For such service the city made a charge, and used the garbage to feed hogs, from which a profit resulted. Plaintiff was injured by one of the trucks and sued the city, securing a judgment. On appeal, the judgment was af-

firmed, and in passing upon the question of the liability of the city for negligence, this court said:

"Whatever the holdings may be elsewhere, we are of the opinion that the ruling in Michigan is that, if a municipality is engaged in a governmental work with an incidental profit, it is liable the same as a private corporation would be."

Defendant, however, relies upon *Johnson* v. *Board of County Road Commissioners of Ontonagon County,* 253 Mich. 465, where defendant board had entered into a contract with the State highway commissioner, by virtue of statutory provisions, to maintain highways, for a certain remuneration to be paid by the commissioner. In that case, as stated by the court (page 469):

"This contract in several particulars is decidedly unlike those usually consummated with independent contractors. It requires the defendant herein to 'appoint a superintendent of maintenance satisfactory to the party of the first part, who shall * * * perform said work at the time and in the manner specified by the party of the first part.' It also requires defendant to 'employ only workmen skilled in their various duties;' and, further, defendant agrees in this contract upon request of the State highway commissioner to discharge any person found to be incompetent or negligent in the performance of his work and not to reemploy such person except with the written consent of the State highway commissioner. Also the wages to be paid and the materials to be purchased are to be such as are agreed to by the State highway commissioner; and by his power of approval reserved in the contract the commissioner controls the type and number of units of equipment to be furnished by the defendant for this work. We think these features of the contract quite conclusively indicate that the defendant

board of road commissioners is only a governmental agency in the hands of the State highway commissioner used in the discharge of certain governmental duties, *i. e.,* the repair and maintenance of State highways. The 5.5 per cent. above actual cost allowed for 'overhead and supervision charge' may or may not result in a net profit. The contract clearly contemplates the keeping of books and the rendering of accounts as well as the employment of a superintendent. And it is obvious that defendant has a substantial investment in its equipment. Whether the fixed rentals cover income on investment and depreciation of equipment, as well as cost of maintenance and operation, the record does not disclose. Plaintiff's declaration alleges that defendant entered into this contract 'upon *profitable* consideration.' While authority to the contrary may be found, we think the burden of proving this allegation, which is essential to plaintiff's right of recovery, is upon plaintiff. *City of Akron* v. *Butler,* 108 Ohio St. 122 (140 N. E. 324). *No proof was offered to sustain plaintiff's allegation of profit;* and defendant's motion for a directed verdict at the close of the proofs should have been granted on the ground that the board of county road commissioners was engaged in the performance of a governmental function at the time and place of the accident.''

The court, however, further said (and it is upon the following statement of law that defendant relies) :

''On this phase of the case it may also be noted that municipal corporations and other governmental agencies when performing a purely governmental function do not lose their immunity from liability for its negligent performance merely because they derive an income therefrom, provided the income is only incidental to the main purpose of so function-

ing and aimed at covering the cost of the undertaking. *Curran* v. *City of Boston,* 151 Mass. 505 (24 N. E. 781, 8 L. R. A. 243, 21 Am. St. Rep. 465); *Bolster* v. *City of Lawrence,* 225 Mass. 387 (114 N. E. 722, L. R. A. 1917 B, 1285); *Bell* v. *City of Cincinnati,* 80 Ohio St. 1 (88 N. E. 128, 23 L. R. A. [N. S.] 910). On the other hand, a municipality may be held to respond in damages for the negligent act of its agent or employee incident to a voluntary activity undertaken for its own profit and commercial in character."

But in spite of apparent variance, this case can not be considered to have overruled *Foss* v. *City of Lansing, supra,* as it only repeated the rule previously laid down before the *Foss Case* in *Gunther* v. *Board of County Road Commissioners of Cheboygan County,* 225 Mich. 619, where it was held that a county performing maintenance work on a State highway in pursuance of a contract with the State highway commissioner, by its board of road commissioners, was performing a governmental function and was not liable for injury caused by the operation of a truck by one of its agents. Such a determination is not inconsistent with the *Foss Case,* for the maintenance of roads is peculiarly a governmental function. *Commissioner of Highways of Township of Niles* v. *Martin,* 4 Mich. 557 (69 Am. Dec. 333). See *City of Detroit* v. *Blackeby,* 21 Mich. 84 (4 Am. Rep. 450); *City of Detroit* v. *Corey,* 9 Mich. 165 (80 Am. Dec. 78). In *Kilts* v. *Board of Supervisors of Kent County,* 162 Mich. 646, it was held that the county was not liable to a laborer engaged in constructing a water system on a poor farm; but in *Rowland* v. *Kalamazoo Superintendents of the Poor,* 49 Mich. 553, liability of defendants was sustained for negligently operating a poor farm so

that a fire spread to adjoining premises, such liability being predicated upon defendants' operation of the farm for pecuniary profit and benefit to the county.

In *Hart* v. *City of Bridgport,* 13 Blatchf. (U. S. C. C.) 289, it was said:

"The principal difficulty which courts have experienced has been in ascertaining, clearly and accurately, the line of demarcation between public governmental duties and private or corporate duties, and has not been in the determination of the question, whether, for a refusal to discharge public duties, the corporation was or was not liable. Public duties are, in general, those which are exercised by the State as a part of its sovereignty, for the benefit of the whole public, and the discharge of which is delegated or imposed by the State upon the municipal corporation. They are not exercised either by the State or the corporation for its own emolument or benefit, but for the benefit and protection of the entire population. Familiar examples of such governmental duties are the duty of preserving the peace, and the protection of property from wrongdoers, the construction of highways, the protection of health and the prevention of nuisances. The execution of these duties is undertaken by the government because there is a universal obligation resting upon the government to protect all its citizens, and because the prevention of crime, the preservation of health, and the construction of means of intercommunication are benefits in which the whole community is alike and equally interested."

It is our conclusion that while the city of Detroit was maintaining the zoological park in its purely governmental capacity, nevertheless in its operation of the miniature railroad, with a resultant profit therefrom, it was exercising a proprietary function;

and was liable for negligence arising from such operation.

The judgment of the circuit court is affirmed, with costs to plaintiff.

SHARPE, POTTER, and CHANDLER, JJ., concurred with McALLISTER, J.

WIEST, J. I do not entertain the opinion expressed by Mr. Justice McALLISTER.

The city of Detroit, under the Constitution (1908), art. 8, § 22, and its charter and laws of this State was empowered to establish and maintain a zoological park, as a governmental function. The miniature train service was for. the convenience of visitors at the park who might desire to ride thereon rather than walk long reaches, was wholly within the park and circled to the various points of interest. Plaintiff was 71 years of age and, to avoid walking from the park entrance to the so-called African station, where animals were kept, a distance of a mile and one-eighth, took the miniature train and paid the fare of five cents.

In this jurisdiction we recognize a distinction between a governmental function, whether permissive or mandatory, and a governmental proprietary business activity. See *Heino* v. *City of Grand Rapids*, 202 Mich. 363 (L. R. A. 1918 F, 528) ; *Royston* v. *City of Charlotte*, 278 Mich. 255.

The location, purpose, character of equipment, and service rendered by this miniature railway all negative a business enterprise or proprietary activity, and the small charge to users for defraying the expense of its maintenance and operation, with surplus, if any, by express provision of the Detroit city charter, title 4, chap. 25, §§ 8 and 9, devoted

exclusively to use by the park commissioners for park purposes, does not render such function a proprietary activity or business enterprise.

In *Meyer* v. *City & County of San Francisco,* 9 Cal. App. (2d) 361 (49 Pac. [2d] 893), it was held, quoting syllabus:

"In operating a miniature train in a public park, a city is acting in a governmental capacity, and when the city is so acting it is not liable for personal injuries sustained by a person riding thereon in the absence of a statute to the contrary."

The report of that case, however, does not disclose whether any fare was exacted.

In jurisdictions like Michigan, where the establishment, operation, and maintenance of public parks is considered a governmental function, it has been held that municipalities do not lose their immunity by reason of a small charge for accessories needed in the use of a bathing pool or beach service. See *St. John* v. *City of St. Paul,* 179 Minn. 12 (228 N. W. 170); *Hendricks* v. *Urbana Park District,* 265 Ill. App. 102; *Hannon* v. *Waterbury,* 106 Conn. 13 (136 Atl. 876, 57 A. L. R. 402); *Mocha* v. *City of Cedar Rapids,* 204 Iowa, 51 (214 N. W. 587); *Gensch* v. *City of Milwaukee,* 179 Wis. 95 (190 N. W. 843). See, also, *Kellar* v. *City of Los Angeles,* 179 Cal. 605 (178 Pac. 505), where the city maintained a summer camp for boys, at which a weekly charge of $3.75 was made, and the city was held not liable for injuries received by a boy at the camp.

The judgment should be reversed, without a new trial and with costs to defendant.

BUTZEL, C. J., and BUSHNELL and NORTH, JJ., concurred with WIEST, J.