## MUNSON v. COUNTY OF MENOMINEE.

1. Trial—Motion to Dismiss—Taking of Testimony—Issue of Fact—Governmental Immunity.
   The taking of testimony at hearing on motion to dismiss declaration against county in action for damages for injuries received alleged to be due to negligence of defendant and because of the maintenance of a nuisance was proper, where the motion had raised an issue of fact with reference to the defense of governmental immunity (Court Rule No 18 [1945]).

2. Counties—Office Facility for State—Rent.
   The fact that the defendant county made no profit from transaction involving provision of office facility for State welfare department personnel in county's building would not be controlling in making determination of issue as to whether semiannual payments made were actually rental for the use of space furnished, it being recognized that the State agency was serving the people of the county in the performance of State functions outlined in the statute (CL 1948, § 400.45).

References for Points in Headnotes
[1] 37 Am Jur, Motions, Rules and Orders § 16.
[2, 4] 32 Am Jur, Landlord and Tenant § 428.
[3, 5] 14 Am Jur, Counties § 51.

3. SAME—OFFICE FACILITY FOR STATE—CONSIDERATION—PROPRIETARY FUNCTION.

The county function must be regarded as proprietary in nature under an arrangement between the county and the State whereby the latter occupies office space in a county building for a consideration paid to the county for such occupancy, irrespective of the amount or method of determining such consideration.

4. LANDLORD AND TENANT—DEFINITION OF RENT.

The word *rent,* derived from the Latin term *reditus,* means the return made by one who occupies real estate under an express or implied contract with the owner, as compensation for the occupation of the premises, and the character of the payment as rent is not changed by a stipulation in the contract or lease whereby the payments are to be applied to a special purpose.

5. COUNTIES—OFFICE FACILITY FOR STATE—PROPRIETARY FUNCTION— DISREPAIR—NUISANCE.

A county which provided an office facility to, and which was used by, the State, in consideration of payment by the State to the county therefor, acted in the exercise of a proprietary, not a governmental, function, hence, as proprietor was subject to liability for injuries caused by disrepair of the facility or the existence of a nuisance of which it had notice.

Appeal from Menominee; Brown (Ernest W.), J. Submitted October 11, 1963. (Calendar No. 34, Docket No. 50,141.) Decided November 4, 1963.

Case by Mildred Munson against the County of Menominee, a body politic and corporate, for personal injuries sustained when struck by falling window shade in office space occupied by State agency in county building. Declaration dismissed on motion. Plaintiff appeals. Reversed and remanded for further proceedings.

*Doyle & Doyle (Thurman B. Doyle,* of counsel), for plaintiff.

*Russell W. Bradley,* Prosecuting Attorney (*Emmet McCarthy,* of counsel), for defendant.

CARR, C. J. Plaintiff brought suit in circuit court to recover damages for injuries claimed to have been suffered by her as a result of negligence and otherwise wrongful conduct on the part of defendant. Each of the 3 counts in her declaration was dismissed on motion, and she has appealed claiming that the trial judge was in error insofar as dismissal of the second and third counts were concerned. Apparently it is conceded that the first count was properly stricken.

The second count of plaintiff's pleading averred that on the 2nd day of June, 1959, she was an employee of the department of social welfare of the State of Michigan, assigned to the performance of duties of that department within the county of Menominee. It was alleged that the department by which she was employed was occupying office space in the Menominee county courthouse under an agreement pursuant to which the State paid a fixed consideration to the county. It was further alleged that it was the duty of the defendant as owner of the premises to maintain the said office, and particularly window shades therein, in a reasonably safe condition so that plaintiff in her capacity as an employee of the State could perform her duties without being subjected to unnecessary dangers. It was asserted that the county failed to perform said duty and that as a result a window shade in the office became out of repair so that, when the plaintiff undertook to adjust it, it sprang or fell from its brackets, striking her on the head and causing serious and permanent injuries to her.

Defendant's motion to dismiss count 2 was based on the theory that the operation of the courthouse involved the exercise of a governmental function, further asserting that defendant did not receive rent as consideration for supplying the office space but that payments were made to it by the State to cover

expenses of operation and maintenance and also the cost of certain alterations amortized over a 5-year period, which presumably were required in order to prepare the office in question for its use by the agency of the State welfare department for which plaintiff was working. Testimony was taken with particular reference to the nature of the relation between the State welfare department and the county, the specific matter of inquiry being whether the county, in furnishing the office space to the State under the agreement above mentioned, was acting in a proprietary capacity or was engaged in the exercise of a governmental function. The circuit judge hearing the matter concluded that the payments made by the State were not in the nature of rent but amounted to the rendition of assistance to the county in the preparation and maintenance of the office facility. The second count of the declaration was accordingly dismissed.

By amendment plaintiff added to her declaration a third count charging that the window shade by the falling of which she had been injured had previously fallen, that defendant was charged with notice of the fact that it was defective, and that allowing it to continue in such a condition as to permit its falling in case of an attempt to adjust it constituted the maintenance of a nuisance. Motion to dismiss said count was granted on the ground that it, in effect, alleged negligence and was, therefore, a repetition of the second count. On behalf of plaintiff it is claimed that the rulings as to the second and third counts were erroneous, and that the question whether the county was engaged in the exercise of a proprietary or of a governmental function should have been left for determination as an issue of fact on the trial of the case.

At the time of the making of the orders from which appeal has been taken Michigan Court Rule

No 18 as adopted in 1945 was in effect, said rule having reference to motions to dismiss. Section 3 thereof provided:

"If, upon the hearing of such motion, the opposite party shall present affidavits or other proof denying the facts alleged or establishing facts obviating the objection, the court may take proof, and hear and determine the same and may grant or deny the motion; but if disputed questions of fact are involved the court may deny the motion without prejudice and shall so deny it if the action is one at law and the opposite party demands that the issue be submitted to a jury."

It must be assumed that the trial judge directed the taking of testimony on the theory that an issue of fact with reference to the defense of immunity raised by the motion to dismiss was presented. The record does not indicate that any demand was made that the issue be submitted to a jury. Under the circumstances it may not be said that the circuit judge acted improperly in taking the testimony of witnesses and considering such testimony in deciding the motion. See in this connection *Case* v. *City of Saginaw*, 291 Mich 130, in which this Court under somewhat analogous circumstances sustained the action of the trial court in taking proofs on an issue of fact involved in a motion to dismiss, reference being made (p 147) to the State statute* giving discretionary authority for such action. In *Lisiecki* v. *Detroit-Wayne Joint Building Authority*, 364 Mich 565, motion to dismiss was granted without the taking of testimony and this Court reversed, holding that plaintiff was entitled to offer proofs to sustain her theory that the function of the defendant involved was proprietary in nature rather than

---

* CL 1929, § 14259, subsequently CL 1948, § 618.8 (Stat Ann § 27-.988), now repealed. See, by way of comparison, GCR 1963, 116.3.— <span style="font-variant: small-caps;">Reporter.</span>

governmental. In the case at bar plaintiff was given such opportunity.

On the record before us the question is presented whether the proofs taken on the motion to dismiss were sufficient to establish defendant's claim that in its arrangement with the State welfare department for the use by the latter of office facilities in the county building defendant was engaged in a governmental function. The general subject of public assistance and welfare is covered by the social welfare act of the State, PA 1939, No 280, as amended.[*] As set forth in the title of said act, there was created thereunder a State department of social welfare the powers and duties of which were specified at some length, and provision was also made for the establishing of county departments, bureaus of social aid, and certain other bureaus and offices, the duties of which were likewise prescribed. It appears from the testimony taken in the instant case that the State agency and the county agency functioned within their proper spheres. The area representative of the State department of social welfare testified that the agency of the State department in defendant county was designated as the "bureau of social aid" and was engaged in "administering the categories of old age assistance, aid to dependent children, aid to the blind, aid to the totally and permanently disabled, and medical assistance to the aged." He further stated that none of the functions of the Menominee county department of social welfare was performed in the State office. The testimony further disclosed that the functions of the Menominee county department of social welfare were to receive, and to process, applications for funds of the county of Menominee. The establishment of county departments of social welfare is

[*] CL 1948, § 400.1 et seq., as amended (Stat Ann 1960 Rev and Stat Ann 1961 Cum Supp § 16.401 et seq.).

provided for in section 45 of the statute (CL 1948, § 400.45 [Stat Ann 1960 Rev § 16.445]). Said section reads as follows:

"There is hereby created a county department of social welfare, hereinafter called the county department, in each county of this State, which shall possess the powers granted and perform the duties imposed in this act. Such county department shall consist of a county social welfare board hereinafter created, and the supervisor of the bureau of social aid hereinafter created, together with such assistants and employees as may be necessary to operate such county department, and may include a director of the county department employed by the county board. The county social welfare board may employ the same person as director and supervisor. The board of supervisors in each county shall provide suitable office accommodations and equipment and supplies for the use of such county department.

"The county board, established in this act, may be a full time working board. Each individual member's salary and expenses shall be fixed by the county board of supervisors according to the amount of time necessary he or they shall devote to the performance of their duties. One of the members of the county board may be designated as the director of the county department. The county board, subject to the approval of the county board of supervisors, shall select the personnel and establish the qualifications and compensation of all the employees and assistants necessary to carry out the provisions of this act pertaining to all forms of relief not financed jointly by State and Federal funds. The members of the county boards shall be appointed at the annual October session of supervisors, and they shall qualify by taking and filing the oath of office with the county clerk, and assume their duties as prescribed by this act not later than November 1, 1939, and pending the appointment of such county boards, the present welfare agencies in each county shall

carry on relief work, as prescribed by the present existing laws until the county board created by this act is established and functioning.

"District departments of social welfare may be organized as hereinafter set forth. Any city now or hereafter having a population of 300,000 or over, as determined by the last Federal decennial census or by any Federal decennial census hereafter taken, may be excluded, as hereinafter set forth from the jurisdiction of the county department of social welfare of the county in which such city is located."

The following section* of the act provided for a county social welfare board and specified the method of selecting the members thereof. The authority vested in the county board of supervisors, and other provisions relating to the county department created by section 45 of the act, suggests that the legislature contemplated the creating of a local authority authorized to grant forms of relief at county expense. Clearly the personnel were county employees. The specific reference to relief "not financed jointly by State and Federal funds" is significant. Obviously the legislature was recognizing a line of demarcation between the functions of the State and of the county. The provision with reference to the duty of the supervisors to provide suitable office accommodations for the use of the county department must be construed in accordance with the general purpose of the section in which it is found.

The arrangement between the county and the State with reference to the furnishing of office space in the county building for the use of the State agency was made in contemplation of the fact that certain alterations would be necessary in order to provide suitable accommodations for the State office. In determining the amount that the State should pay

---

* CL 1948, § 400.46 (Stat Ann 1960 Rev § 16.446).—REPORTER.

to the county there was apparently agreement that approximately 1/2 of such expense should be payable out of State and Federal funds over a period of 5 years, and that thereafter the payments should be reduced to a lesser amount. All such payments were to be made at 6-months' intervals. The testimony indicates that, in reaching a conclusion as to the sum to be paid to the county, inquiries were made by the State representative with reference to rental values for space of the character and extent desired.

It is claimed that the sum paid, $194.04 each 6 months, did not contemplate that the county should make any profit from the transaction. Such fact, however, would not be controlling of the issue as to whether the semiannual payments made were actually rental for the use of the space furnished in the county building. It may be assumed that in making the arrangement in question, which apparently rested entirely in correspondence, it was recognized that the State agency was serving the people of the county in the performance of the State functions outlined in the statute and in the testimony above mentioned.

If the arrangement between the county and the State pursuant to which the latter occupied office space in the county building actually contemplated the furnishing of the facility in question for a consideration the county function involved must be regarded as proprietary in nature. The amount of the consideration is not of controlling significance nor is the manner by which such amount was determined. The term "rent" is defined in 32 Am Jur, Landlord and Tenant, § 428, p 347, as follows:

"The word 'rent' derives from the Latin word 'reditus.' In ordinary use, it means the return made by one who occupies real estate under an express or implied contract with the owner, for the occupa-

tion of the premises, and is defined broadly as the compensation in money, provisions, chattels, or services, paid or given in exchange for the use and occupation of real estate. Thus defined, it includes a 'royalty' based on the output of a mine."

Likewise, in 52 CJS, Landlord and Tenant, § 462, p 201, it is said:

" 'Rent,' as the term is employed in the law of landlord and tenant, may be defined as the return, whether of money, service, or specific property, which the tenant makes to the landlord as compensation for the use of the demised premises. More broadly, 'rent' may be defined as a compensation paid for the use of land, and by general usage the word 'rent' may include the compensation to be paid for the occupation of land by a tenant, whether he holds under a written lease, or at will, or at sufferance, and whether the amount to be paid has been defined by the agreement of the parties or has been left indefinite. The character of a payment as rent is not changed by stipulation in the contract or lease whereby the payments are to be applied to a special purpose."

It does not appear in the case at bar that there was any specific agreement between the parties that the payments by the State should be directly applied on the cost of the alterations or devoted to the maintenance and operation of the county building. However, any agreement or understanding with reference to the use of such payments would not alter its character as rent. In *Ryerson* v. *Quackenbush,* 26 NJL 236, rent under a written lease of real estate was made payable to the lessor to be applied in satisfaction of a decree obtained by the lessor and another in a court of chancery. Commenting on this feature of the case, it was said (p 252):

"It is clearly a good reservation of rent to the lessor, the special purpose to which the rent was

to be applied in nowise affecting its character as *rent* or the legal rights of the parties in regard to enforcing its payment."

In entering into the agreement to furnish office space to the State welfare department for the use of the latter Menominee county was not performing a governmental function vested by law in it. The fact that the office space was used by the State in performing such a function of its own does not alter the situation. Under the testimony in the record before us the conclusion cannot be avoided that defendant was leasing its property to another for a consideration. This constituted a proprietary function. In *Sawaya* v. *Tucson High School District No. 1,* 78 Ariz 389 (281 P2d 105), the defendant school district rented its stadium to another school which conducted an athletic contest therein. Plaintiff alleged that he was injured because of the defective condition of the stadium. It was recognized in the case that in the performance of its functions in connection with the furnishing of educational facilities defendant could not be held liable for the negligence of its employees. It was held, however, that in leasing its stadium and receiving compensation therefor defendant was in the exercise of a proprietary function and was accordingly liable for its negligence in the maintenance of the leased property. The renting of the stadium did not involve the exercise of a governmental function vested in defendant. See, also, *Dohm* v. *Township of Acme,* 354 Mich 447, in which defendant township was held to have acted in a proprietary capacity in renting the use of the town hall for an activity not involving the exercise of its governmental functions.

For the reasons indicated we think that the trial judge was in error in holding on the basis of the proofs taken before him that the furnishing of the

space in the county building to the State welfare department involved the exercise of a governmental function. As before noted, in taking the action in question defendant was not performing any public duty of its own. The occupancy by the State took place under and by virtue of a contractual undertaking. For like reasons the motion to dismiss the third count should have been denied. Said count charged the existence of a nuisance of which defendant had notice and it may not be said that such nuisance was created in connection with or resulted from the performance of a governmental function. Whether the existing situation did, as alleged by plaintiff, amount to a nuisance is, of course, a question of fact to be determined on the trial of the case. The general principles governing a case of such nature have been considered by this Court in numerous prior decisions, among which may be cited: *Brown* v. *Nichols,* 337 Mich 684; *Dahl* v. *Glover,* 344 Mich 639; *Bluemer* v. *Saginaw Central Oil Service, Inc.,* 356 Mich 399. We are not here concerned with liability imposed on the theory of trespass to person or property and, hence, *Robinson* v. *Township of Wyoming,* 312 Mich 14; *Rogers* v. *Kent Board of County Road Commissioners,* 319 Mich 661; and *Herro* v. *Chippewa County Road Commissioners,* 368 Mich 263, and other cases of like import are not in point.

The case is remanded to circuit court with directions to set aside the orders dismissing counts 2 and 3 of plaintiff's declaration, and for further proceedings.

DETHMERS, KELLY, SOURIS, and SMITH, JJ., concurred with CARR, C. J.

BLACK and KAVANAGH, JJ., concurred in result.

O'HARA, J., did not sit.