ROHRABAUGH v HURON-CLINTON METROPOLITAN
AUTHORITY CORPORATION

OPINION OF THE COURT

1. CONSTITUTIONAL LAW—GOVERNMENTAL IMMUNITY—STATUTES.

Michigan's governmental immunity statute is constitutional (MCLA 691.1401 *et seq.;* MSA 3.996[101] *et seq.).*

2. MUNICIPAL CORPORATIONS—GOVERNMENTAL IMMUNITY—ROLLER RINKS—GOVERNMENTAL FUNCTIONS—PUBLIC PARKS—TORTS.

The operation of a roller rink by a municipal authority is not a governmental function, particularly where admission and rental charges for skates are made; the fact that the rink is operated on the premises of a public park does not shield this activity from tort liability.

3. MUNICIPAL CORPORATIONS—RECREATIONAL PARKS—GOVERNMENTAL FUNCTIONS.

The operation of a recreational park by a municipal authority has been traditionally treated by Michigan's courts as a governmental function.

4. MUNICIPAL CORPORATIONS—PROPRIETARY FUNCTIONS—GOVERNMENTAL FUNCTIONS—DUAL USE OF PROPERTY—NATURE OF FUNCTION.

A municipal authority may be engaged in both proprietary and governmental functions through the dual use of its property; the nature of the function involved and the particular facts attending its exercise have been deemed of controlling significance in determining the particular capacity in which the

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 69.

[2, 3, 5–8] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 27 *et seq.*

59 Am Jur 2d, Parks, Squares and Playgrounds §§ 38–51.

[4, 5] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 145 *et seq.*

Maintenance of auditorium, community recreational center building, or the like, by municipal corporation as governmental or proprietary function for purpose of tort liability. 47 ALR2d 544.

municipal authority was acting when there was a dual use of the property.

5. MUNICIPAL CORPORATIONS—PUBLIC PARKS—GUIDED TOURS—EXCURSION BOATS—GOVERNMENTAL FUNCTIONS—PROFIT MOTIVE.

The operation, in a public park, of guided tours, excursion boats, and other similar operations by a municipal authority may be characterized as a governmental function where: (1) their existence absolutely depends on the presence of the park, (2) the services for the different operations are inseparable, (3) the use of such operations is adjunct to the use of the park, (4) the operations would be of little or no value without the park, and (5) such additional operations are nearly akin to the business of operating the park and in conjunction with the governmental function of operating the park; the existence of a profit motive may be of controlling significance in determining whether such operations are capable of existing absent the park.

6. MUNICIPAL CORPORATIONS—PUBLIC PARKS—ROLLER RINKS—RESTAURANTS—PROPRIETARY FUNCTIONS—CONSIDERATION.

The operation, in a public park, of a roller skating rink, restaurant, or other similar operation by a municipal authority is a proprietary function having independent vitality separate from the governmental function of operating the park where: (1) people would still use such facilities exclusive of the nature of the surrounding park, (2) the use of such facilities is not linked to the use of the park, and (3) such facilities compete with private business and can exist separate from the park; the amount of consideration charged by such facilities is not of controlling significance.

7. MUNICIPAL CORPORATIONS—PUBLICLY OPERATED BUSINESSES—PUBLIC PARKS—PROPRIETARY CHARACTER—GOVERNMENTAL CHARACTER—MONOPOLIES.

The character of a publicly operated business is not changed from proprietary to governmental by the fact that the business operates as a monopoly in a public park.

DISSENT BY BASHARA, J.

8. MUNICIPAL CORPORATIONS—ROLLER RINKS—PUBLIC PARKS—PROPRIETARY FUNCTIONS—GOVERNMENTAL IMMUNITY—TORTS.

*The operation of a roller skating rink by a municipal authority, as one of the many attractions in a public park operated by the authority, is not shown to be a proprietary function to which the doctrine of governmental immunity from tort liability for*

the operation of municipal parks would not apply where: (1) there is no clear showing of even an attempt to make a profit on the rink, (2) the unique cost structure and the need to control the rink's users necessitates the charging of a small fee substantially less than charged by private rinks, and (3) the rink's operation does not solely depend upon the other available facilities but the economics of the rink shows that it functions in direct relation to its locale.

Appeal from Macomb, Robert J. Chrzanowski, J. Submitted March 3, 1977, at Detroit. (Docket No. 28208.) Decided May 17, 1977.

Complaint by Joanne Rohrabaugh against Huron-Clinton Metropolitan Authority Corporation for damages for injuries sustained while skating at the defendant's roller rink. Defendant moved for accelerated judgment and dismissal on the basis of governmental immunity. Judgment for defendant. Plaintiff appeals. Reversed and remanded for trial.

*Lopatin, Miller, Bindes, Freedman & Bluestone* (by *Michael Gagleard*), for plaintiff.

*Garan, Lucow, Miller, Lehman, Seward & Cooper, P. C.* (by *George J. Parish*), for defendant.

Before: D. E. HOLBROOK, P. J., and BASHARA and W. F. HOOD,* JJ.

D. E. HOLBROOK, P. J. This action arose out of injuries sustained by plaintiff while skating at a roller rink operated by defendant Huron-Clinton Metropolitan Authority Corporation (hereafter referred to as Authority). Defendant moved for accelerated judgment and dismissal on the basis of governmental immunity, MCLA 691.1401 *et seq.;* MSA 3.996(101) *et seq.,* and the trial court granted

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the motion. Plaintiff's motion for rehearing was denied. Plaintiff appeals as of right.

Plaintiff initially challenges the constitutionality of the governmental immunity statute. This Court has frequently been faced with such arguments and has declined to hold the statute unconstitutional.[1] *Wynn v Cole,* 68 Mich App 706; 243 NW2d 923 (1976), *Lockaby v Wayne County,* 63 Mich App 185; 234 NW2d 444 (1975), *Knapp v Dearborn,* 60 Mich App 18; 230 NW2d 293 (1975), *In re Jones Estate,* 52 Mich App 628; 218 NW2d 89 (1974), *lv den* 392 Mich 770 (1974). We feel we are constrained to follow precedent and rule that the governmental immunity statute is constitutional. Our Supreme Court recently reviewed this statute in three cases, *Thomas v Department of State Highways,* 398 Mich 1; 247 NW2d 530 (1976), *Pittman v City of Taylor,* 398 Mich 41; 247 NW2d 512 (1976), *McCann v Michigan,* 398 Mich 65; 247 NW2d 521 (1976). The Court did not address the constitutionality of this statute, although it did spend a considerable amount of time and space explaining its operation. The Court failed to discuss constitutionality even while Justice Levin concluded in dissent that the statute was violative of the equal protection clause, *Thomas, supra,* at 26, Justice Levin dissenting. See also *Thomas,* at 19, n 8, Chief Justice Kavanagh and Justice Fitzgerald dissenting, and *Pittman, supra,* at 49, n 8. While dissenting in *Thomas* at 15, Justices Kavanagh and Fitzgerald did state that the constitutional issues raised by the appellant were "not ripe for appellate resolution". Apparently the

---

[1] *See Krause v Ohio,* 31 Ohio St 2d 132; 285 NE2d 736 (1972), *appeal dismissed,* 409 US 1052; 93 S Ct 557; 34 L Ed 2d 506 (1972), upholding Ohio's governmental immunity doctrine, reversing the lower court's finding of an equal protection violation in *Krause v Ohio,* 28 Ohio App 2d 1; 274 NE2d 321 (1971).

rest of the Court, with the exception of Justice
LEVIN, agreed with Justices KAVANAGH and FITZ-
GERALD on this point. Until such time as the
Supreme Court reverses prior law and finds the
statute unconstitutional, we are bound by prece-
dent.

We must now turn to the question of whether
the operation of this outdoor roller skating facility,
located in a municipal park, constitutes a govern-
mental function which in turn, by operation of
statute, renders the Authority immune from liabil-
ity. MCLA 691.1407; MSA 3.996(107). The Supreme
Court in the recent governmental immunity cases
concluded that the language of this statute "Obvi-
ously * * * must be construed as an 'affirmation'
of case-law precedent on the subject of the state's
immunity". *Thomas, supra,* at 11. The Court did
recognize that in applying the traditional common
law test of governmental immunity there will be
many incidences in which "governmental activities
have never been examined in terms of whether
they constitute governmental function" and areas
in which "the case-law precedent is less than
clear". *Thomas, supra,* at 11. This is such a case.

Michigan courts have traditionally treated the
operation of recreational parks as a governmental
function. *Royston v Charlotte,* 278 Mich 255; 270
NW 288 (1936), *Matthews v Detroit,* 291 Mich 161;
289 NW 115 (1939), *Penix v St Johns,* 354 Mich
259; 92 NW2d 332 (1958). In the same year that
*Penix* was decided, however, the Court also held
that the operation of an entertainment hall was a
proprietary function. *Dohm v Township of Acme,*
354 Mich 447; 93 NW2d 323 (1958). The determina-
tion of whether the operation of this facility con-
stituted a governmental function depends upon a
proper characterization of the nature of this opera-
tion.

Herein, plaintiff went to the Metropolitan Beach Roller Rink, the recreational facility operated and maintained by defendant Authority. Once there, she paid $1 for admission and skate rental, and proceeded to skate around the outdoor rink. Plaintiff's injuries resulted when she was knocked down from behind by another skater.

Defendant submitted affidavits that indicated that a 50-cent admission fee was imposed in order to have some control over users and to control some of the cost of operation, including maintenance, wages and other expenses. Expenses of the park are apparently met by general tax revenues of the Authority.[2] Defendant maintains that the roller rink was not set up to make a profit and that the rates charged are not competitive with the rates charged at comparable facilities conducted by private business. Plaintiff, in fact, however, indicated in a deposition that this was the first time she patronized this facility, and that normally her skating was done at a private profit-oriented establishment.

---

[2] Defendant submitted the following financial statement regarding the operation of the park:

| YEAR | REVENUE | EXPENSES |
|------|---------|----------|
| 1968 | $310,489.19 | $633,526.02 |
| 1969 | 307,656.40 | 731,517.93 |
| 1970 | 356,347.41 | 792,845.54 |
| 1971 | 364,712.05 | 915,915.99 |
| 1972 | 337,654.42 | 857,961.13 |
| 1973 | 435,779.54 | 891,097.00 |

Apparently no figures were submitted for the roller rink alone. Unfortunately, the trial court placed heavy emphasis on the fact that the park as a whole lost money and concluded:

"The roller rink is merely a small part of the larger whole, Metropolitan Beach Park. While it is true that defendant did not file figures for the roller rink itself, it is clear from Mr. Hogan's affidavit that the Park as a whole operates in the red to the tune of six figures.

"Further the charge is nominal. Taking these two factors into consideration, it is clear that the proprietary function does not apply. *See Smith v Board of Commissioners of the Huron-Clinton Metropolitan Authority,* 49 Mich App 280 [212 NW2d 32] (1973)."

A review of Michigan authority does not reveal any cases directly on point. A review of sister states' experiences also is inconclusive. A Florida court has held that a city exercises a proprietary function while operating playground and recreational areas. *Daytona Beach v Baker,* 98 So 2d 804 (Fla App, 1957). North Carolina has held that a city was engaged in a proprietary function when it operated and leased an arena for ice hockey games in return for a share of box office receipts. *Aaser v Charlotte,* 265 NC 494; 144 SE2d 610 (1965). On the other hand, Connecticut has held in a case almost directly on point that operation of a skating rink at a community center by a town is a governmental function even though a small fee was charged for use of the facilities. *Wolfe v Branford,* 22 Conn Sup 239; 167 A2d 924 (1960). See Anno, *Maintenance of auditorium, community recreational center building, or the like, by municipal corporation as governmental or proprietary function for purposes of tort liability,* 47 ALR2d 544. Each state's experience with and decisions regarding governmental immunity vary greatly. See Cooperrider, *The Court, The Legislature, and Governmental Tort Liability in Michigan,* 72 Mich L Rev 187 (1973). In resolving this matter, we feel Michigan authority must be followed and, therefore, we do not rely on other states' rather inconclusive treatment of this subject.

A review of Michigan authority reveals a recent case which at first glance appears to be on point. *Smith v Board of Commissioners of the Huron-Clinton Metropolitan Authority,* 49 Mich App 280; 212 NW2d 32 (1973).[3] In *Smith,* plaintiff was in-

---

[3] Interestingly enough the instant case involves the same defendant as in *Smith. See, also, Huron-Clinton Metropolitan Authority v Boards of Supervisors of Five Counties,* 300 Mich 1; 1 NW2d 430 (1942).

jured when he fell off a gangplank of an excursion boat at the same park we are concerned with herein. The Court held:

"The problem, so refined, is whether defendant operated the 'Island Queen' 'primarily for the purpose of producing a pecuniary profit for the state'. Considering the undisputed fact that the boat was operated during the four years immediately prior to plaintiff's injuries at a deficit, the only possible conclusion is that it was not for the purpose of profit.

* * *

"Considering both the statutory definition[4] and the four-year deficit, it was not reversible error for the trial court to conclude that defendant's operation of the 'Island Queen' was a governmental function, immune from tort liability under MCLA 691.1407; MSA 3.996(107)." 49 Mich App at 283–284.

This decision in *Smith* is troubling to this panel and we do not need to say how we would have decided that case. We do note the following appropriate remarks made by Judge T. M. BURNS dissenting in *Smith:*

"More importantly, however, the majority, in determining the question of the defendant's liability by relying exclusively upon whether a pecuniary profit was made in operating the excursion boat, place prospective injured plaintiffs at the mercy of a governmental agency's management skills and business practices. For example, in *Matthews v City of Detroit,* 291 Mich 161,

---

[4] MCLA 691.1413; MSA 3.996(113) provides:

"The immunity of the state shall not apply to actions to recover for bodily injury or property damage arising out of the performance of a proprietary function as herein defined.

Proprietary function shall mean any activity which is conducted primarily for the purpose of producing a pecuniary profit for the state, excluding, however, any activity normally supported by taxes or fees. No action shall be brought against the state for injury or property damage arising out of the operation of proprietary function, except for injury or loss suffered on or after July 1, 1965."

167–168; 289 NW 115, 118 (1939), a plaintiff visited the Detroit Zoological Park. The city operated a miniature railroad within the park to transport visitors to various points of interest. As here, there was no charge for admission to the park, but fare on the railroad was five cents. The park was maintained at the city's expense; however, the operation of the railroad was profitable, though offset by the greater expense of maintaining the park. Plaintiff paid the five-cent fare and was transported via the railroad to an exhibit on the grounds. While attempting to step off the car, however, the engine jerked and plaintiff was tossed to the platform and injured. Plaintiff brought suit against the city and recovered a jury verdict. The City of Detroit appealed alleging *inter alia* the defense of governmental immunity. In rejecting this argument and affirming the plaintiff's verdict, the Court stated:

" 'It is our conclusion that while the city of Detroit was maintaining the zoological park in its purely governmental capacity, nevertheless in its operation of the miniature railroad, with a resultant profit therefrom, it was exercising a proprietary function; and was liable for negligence arising from such operation.'

"To grant relief in one case and deny it in the case at bar merely upon the happenstance a profit was turned by a governmental agency is both illogical and unconscionable. I can perceive of no sound reason why plaintiffs should not have their day in court." 49 Mich App at 284–285.

*Smith* can be distinguished, however. Obviously, the use of the excursion boat in *Smith* was an adjunct to use of the park. Without the park the excursion was of little or no value. The use of the excursion boat was in conjunction with the governmental function of operating a park (it may not have competed with private business) and was more nearly akin to the business of operating a park.

Operation of a roller rink is intrinsically a different function. People would come to the park to

use the rink exclusive of the nature of the surrounding park. Use of the rink was not linked with use of the park. The rink did in fact compete with private business as illustrated by the fact of plaintiff's use of such facilities. The operation of the rink could be compared with the operation of a restaurant in the park. If, in fact, the restaurant did compete favorably with private business its existence could be assured regardless of circumstances affecting the park. Obviously, the monopoly of a publicly operated business in the park enhances the business's value, but it does not change its character from proprietary to governmental. The fact that absent the park the restaurant cannot compete with private business does not change its character, and even operation at a loss does not convert this proprietary function to a governmental function. The amount of the consideration charged should not be of controlling significance. See *Munson v County of Menominee*, 371 Mich 504, 512; 124 NW2d 246 (1963). We fail to see any distinguishing feature between a restaurant and the operation of a roller rink. These concerns could be distinguished, however, from guided tours and similar operations which further the use of the park and whose existence absolutely depends on the existence of the park. Such operations are incapable of existing absent the park and the operation of such services are clearly inseparable from the operation of the park. In those instances, the existence of a profit motive may be of controlling significance. See *Matthews v Detroit, supra.* However, in the instant case or in the case of a restaurant which does in fact compete with private business and is capable of existing regardless of the continuation of the operation of the park itself, these operations have independent vitality and must be considered as a separate function for purposes of statutory immunity.

A municipal authority may well be engaged in a proprietary function at the same time it is engaged in a governmental function. *Bofysil v Department of State Highways,* 44 Mich App 118; 205 NW2d 222 (1972), *Carlisi v Marysville,* 373 Mich 198; 128 NW2d 477 (1964), *Munson v County of Menominee, supra.* In *Carlisi,* the Court centered on the particular activity which caused plaintiff's injury.

"This Court has considered the question of determining the particular capacity in which a defendant city was acting where there was involved a dual use of property. *Matthews v Detroit,* 291 Mich 161 [289 NW 115 (1939)]; *Lisiecki v Detroit Wayne Joint Building Authority,* 364 Mich 565 [111 NW2d 803 (1961)]; *Munson v County of Menominee,* 371 Mich 504 [124 NW2d 246 (1963)]. The rule from these cases is that if the object and purpose of the legislature in conferral of the powers involved is for public purposes exclusively, then the municipality is deemed to be acting in a governmental capacity. However, if the grant of power is for purposes of private advantage and emolument, then even though the public derives some benefit therefrom the municipality stands on the same footing as any private individual without the shield of governmental immunity." 373 Mich at 205.

Several years earlier the Court observed that: "[g]enerally speaking, the nature of the function involved and the particular facts attending its exercise have been deemed of controlling significance". *Dohm, supra,* at 449–450. The fact that the municipal authority operates a roller rink on the premises of a public park should not shield this activity from liability. Operation of a roller rink, particularly where admission and rental charges for skates are made, is not a governmental function.

The trial court's grant of accelerated judgment

on the basis that the roller rink was merely a small part of the larger park and that the maintenance of a park is a governmental function was error. Operation of this roller skating facility was in fact not a governmental function and we, therefore, reverse, set aside the accelerated judgment and remand for trial on the merits. Costs to plaintiff.

W. F. HOOD, J., concurred.

BASHARA, J. *(dissenting)*. I respectfully dissent.

I am not convinced the case law cited in support of the majority's decision requires a finding that the roller rink was operated as a proprietary function. *Matthews v Detroit,* 291 Mich 161; 289 NW 115 (1939), was decided by an equally divided Court, and hence is of limited precedential value. The more recent opinion from this Court, *Smith v Board of Commissioners of the Huron-Clinton Metropolitan Authority,* 49 Mich App 280; 212 NW2d 32 (1973), is factually similar to the case at bar.

The majority argues that the roller rink is proprietary because it could exist separate from the park. It is true that the operation of the rink does not solely depend upon the other available facilities. On the other hand, the economics of the rink shows that it functions in direct relation to its locale.

It was undisputed at the trial that the roller rink charges fees substantially less than those in effect at privately owned rinks. There was no evidence showing that the rink fees covered its costs, let alone produced any profit for the defendant. The rink is just one of the many attractions in the overall park.

The unique cost structure and need to control

the users of such an attraction necessitate the charging of a small fee. However, I do not believe that in the instant case and in *Smith, supra,* the function thereby becomes proprietary in nature. In the absence of any clear showing of even an intent for profit, the consistently-applied doctrine of governmental immunity for the operation of municipal parks should not be waived.

I would affirm.