HASELHUHN v THE HURON-CLINTON METROPOLITAN
AUTHORITY

Docket No. 49845. Submitted January 21, 1981, at Detroit.—Decided
    May 19, 1981.

    Patricia A. Haselhuhn, a groundskeeper employed by the Huron-
    Clinton Metropolitan Authority (HCMA) under the Comprehen-
    sive Employment and Training Act (CETA), was killed in a
    motor vehicle collision while performing her duties at Stoney
    Creek Metropark. Robert A. Haselhuhn, Patricia's father,
    brought an action individually and as administrator of the
    estate of Patricia A. Haselhuhn in Wayne Circuit Court. Jane
    A. Haselhuhn, decedent's mother, was also a named plaintiff.
    Defendant, HCMA, filed motions for summary and accelerated
    judgments on two grounds: (1) that plaintiffs' suit was barred
    by governmental tort immunity, and (2) that the deceased was
    an employee of the HCMA and, as such, plaintiffs' exclusive
    remedy was under workers' compensation. Plaintiffs' subse-
    quent motion to amend their complaint to join Robert Watts
    and Marvin Armstadt, decedent's supervisors, as defendants
    was granted, Horace W. Gilmore, J. HCMA's motion for sum-
    mary judgment on the basis of governmental immunity was
    granted, but the motion for accelerated judgment on the exclu-
    sive remedy of workers' compensation was held in abeyance
    until the time of trial. Watts and Armstadt then moved to
    change venue to Macomb County. The motion was granted,
    James Montante, J. Watts and Armstadt moved for accelerated
    and summary judgments in Macomb Circuit Court on the same
    grounds alleged by HCMA in Wayne County. The Macomb
    Circuit Court granted summary judgment on both grounds,
    Edward J. Gallagher, J. Plaintiffs appeal the summary judg-
    ments granted by the two circuit courts. *Held:*

        1. Governmental immunity is a valid bar to the plaintiffs'
    action against HCMA. The training that the decedent was

REFERENCES FOR POINTS IN HEADNOTES
[1] 79 Am Jur 2d, Welfare Laws § 42.
[2] 59 Am Jur 2d, Parks, Squares, and Playgrounds §§ 38-41.
[3] 81 Am Jur 2d, Workmen's Compensation §§ 50, 51.
[4] [No Reference].

receiving from HCMA in connection with CETA qualifies as a governmental function, bringing HCMA under the protection of governmental immunity. The decedent's duties as a grounds-keeper were performed in support of the overall operation of the park, an activity generally performed only by government entities. Absent evidence that the decedent was working to accomplish a nongovernmental task at the time of the accident, the cause of action against HCMA was properly dismissed.

2. Decedent was an "employee" of Huron-Clinton Metropoli-tan Authority for purposes of the Worker's Disability Compen-sation Act and, therefore, the exclusive remedy provisions of the act apply. The Macomb Circuit Court committed no error by dismissing the plaintiffs' claims against Watts and Arms-tadt.

Affirmed.

1. GOVERNMENTAL IMMUNITY — COMPREHENSIVE EMPLOYMENT AND TRAINING ACT — STATUTES.

Training in connection with the Comprehensive Employment and Training Act (CETA) is a governmental function under either the common-law test or the essence of governing standard used to determine governmental tort immunity (28 USC 801 *et seq.;* MCL 691.1407; MSA 3.996[107]).

2. GOVERNMENTAL IMMUNITY — STATE PARKS — DUTIES OF EMPLOYEES — GOVERNMENTAL FUNCTIONS.

Duties performed by an employee of a state park or recreation area in support of the overall operation of the park or area are governmental functions to which the defense of governmental immunity applies in the absence of evidence that the duties being performed are for the accomplishment of a nongovern-mental task (MCL 691.1407; MSA 3.996[107]).

3. WORKERS' COMPENSATION — REMEDIES — EXCLUSIVE REMEDY — STATUTES.

An employee is limited to those benefits provided by the Worker's Disability Compensation Act to compensate for personal inju-ries received in the course of employment (MCL 418.131; MSA 17.237[131]).

4. APPEAL — WORKERS' COMPENSATION — COMPREHENSIVE EMPLOY-MENT AND TRAINING ACT — EMPLOYEE — STATUTES.

A trial court did not err by finding that a person employed under the Comprehensive Employment and Training Act (CETA) was an "employee" of Huron-Clinton Metropolitan Authority for

purposes of the Worker's Disability Compensation Act (28 USC 801 *et seq.;* MCL 418.161[1][c]; MSA 17.237[161][1][c]).

*Gottlieb & Goren, P.C.,* for plaintiffs.

*Garan, Lucow, Miller, Seward, Cooper & Becker* (by *Sharon C. Ranucci); Gromek, Bendure & Thomas,* by *Nancy L. Bosh,* of counsel, for defendants.

Before: N. J. KAUFMAN, P.J., and M. J. KELLY and CYNAR, JJ.

M. J. KELLY, J. This case presents a first impression question in Michigan; that is, where an injury occurs in the course of employment to one alleged to be an employee of the United States Government under the Federal Comprehensive Employment and Training Act, is a dual employment question of fact presented which precludes summary judgment?

Plaintiffs appeal as of right from separate lower court orders granting defense motions for summary judgment.

On June 23, 1976, the plaintiffs' daughter, Patricia Ann Haselhuhn, was killed in a motor vehicle collision at Stoney Creek Metropark. Patricia Ann was employed under the Comprehensive Employment and Training Act (CETA), 29 USC 801 *et seq.,* and was working at the park as a groundskeeper. The park was operated by defendant Huron-Clinton Metropolitan Authority (HCMA). At the time of her death, Patricia Ann was allegedly under the supervision of defendants Watts and Armstadt, who were employees of HCMA and whose duties included supervision of CETA employees. Just prior to the fatal accident, Patricia Ann was directed to drive a golf-cart-like vehicle

the wrong way on a one-way road for an undisclosed purpose. At that time, the park was not open and weather conditions were foggy. In the fog, Patricia Ann's vehicle collided with a truck traveling in the opposite direction.

This case comes before us on the odd procedural origin of final orders entered in different circuits. On July 6, 1977, plaintiffs brought suit against the HCMA in Wayne County Circuit Court. HCMA filed motions for summary and accelerated judgments on two grounds: (1) that plaintiffs' suit was barred by governmental tort immunity and (2) that the deceased was an employee of the HCMA and, as such, plaintiffs' exclusive remedy was under workers' compensation.

Plaintiffs later moved to amend their complaint to join Armstadt and Watts as defendants. On February 21, 1978, Judge Horace Gilmore of the Wayne County Circuit Court granted the motion to amend. The next day Judge Gilmore granted HCMA's motion for summary judgment on the basis of governmental immunity, but held in abeyance the motion for accelerated judgment on the exclusive remedy of workers' compensation. In the interim, Armstadt and Watts moved to change venue to Macomb County, which motion was granted on July 13, 1978. Once the case against Armstadt and Watts reached Macomb County, the defendants filed motions for accelerated and summary judgments on the same grounds alleged by HCMA in Wayne County. On March 16, 1979, Macomb County Circuit Court Judge Edward J. Gallagher granted summary judgment on both grounds and issued an order to that effect on August 3, 1979.

I

In recent years the issue of governmental tort

immunity for parks and recreational areas has produced considerable activity in the appellate courts in this state. For example, in a case involving one of these parties, this Court held that the operation of a park and recreational area is a governmental function and thus clothed with governmental immunity. *Rohrabaugh v Huron-Clinton Metropolitan Authority Corp,* 75 Mich App 677; 256 NW2d 240 (1977). However, as a result of several closely divided opinions from the Supreme Court, this Court has reexamined the issue presented in *Rohrabaugh* several times, with conflicting results.

Governmental immunity from tort liability is provided by statute:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed." MCL 691.1407; MSA 3.996(107).

A split of authority has developed in the Supreme Court over how this act should be applied. Justices FITZGERALD, KAVANAGH and LEVIN would limit governmental functions under this act to those activities that are "of essence to governing". *Parker v Highland Park,* 404 Mich 183, 194; 273 NW2d 413 (1978), dissent in *Perry v Kalamazoo State Hospital,* 404 Mich 205, 215; 273 NW2d 421 (1978). Justices RYAN, WILLIAMS and COLEMAN would apply the common-law principles developed for the passage of the governmental immunity act

to determine whether the government should be immune. *Parker, supra,* dissenting opinion, 203, *Perry, supra,* 210-211. Justice MOODY wrote separately in *Perry* and *Parker* engrafting on the KAVANAGH-LEVIN-FITZGERALD language an "only by government" limitation:

"To delineate a complete and balanced definition of governmental function within a simplistic format would be presumptuous. However, as a basic guideline, the crux of the governmental essence test should be founded upon the inquiry whether the purpose, planning and carrying out of the activity, due to its unique character or governmental mandate, can be effectively accomplished only by the government. Unless liability would be an unacceptable interference with government's ability to govern, activities that fall outside this perimeter, although performed by a government agency, are not governmental functions and therefore not immune." *Parker, supra,* 200.

See also *Keenan v Secretary of State,* 103 Mich App 82; 302 NW2d 602 (1981).

Before applying these various tests to the facts of the instant case, it is necessary to determine what function the government branch was performing when plaintiffs' decedent was injured. HCMA was filling a dual role at the time of the accident. First, HCMA was involved in training the unemployed as part of its agreement to accept CETA workers. Second, HCMA was involved in the maintenance of a recreation area for the benefit of the public.

The training of unemployed workers is a task that has been assumed by the government from the depression era onward. No private agency would be likely to undertake this function, as little profit could be found in such a task. Thus, under

either the common-law test or the essence of governing standard, we regard training in connection with CETA as a governmental function.

The question of whether HCMA was filling a governmental function in maintaining a recreation area is closer. Plaintiffs rely on *Pichette v Manistique Public Schools,* 403 Mich 268; 269 NW2d 143 (1978), for the proposition that maintenance of a park is not a governmental function. In that case, however, the Court was considering a playground —not a large recreational area—and the majority did not rule on whether operating a playground is a governmental function.

Since *Perry* and *Parker,* this Court has twice considered whether the operation of large recreational areas constitutes an immune governmental function. In *Daugherty v Michigan,* 91 Mich App 658; 283 NW2d 825 (1979), the Court considered the issue when a patron at the Proud Lake Recreation Area was seriously injured by diving from an abandoned bridge into the Huron River. The Court recognized the traditional view of park operations but found that the changing views of the Supreme Court required a different result. The Court held:

"In applying the law as stated in the recent decisions of our Supreme Court as we understand it, it appears that the operation of a recreational area is not 'of essence to governing' because it is not an activity which can be done only by government. Private recreational areas do exist and provide essentially the same services. Also under the analysis stated by Mr. Justice MOODY, in *Parker,* the instant case does not present a situation where the purpose, planning, carrying out of the activity, due to its unique character or governmental mandate, can be effectively accomplished only by government. In addition, liability would not be an unacceptable interference with the government's obligation to govern.

"Applying the principles laid down in *Parker,* we rule that the operation of the recreational area in question was not a governmental function. Therefore, defendants would not enjoy governmental immunity." *Id.,* 663.

More recently another panel of this Court limited the broad language of *Daugherty.* Faced with a similar situation (drowning at a swimming area in a state recreation facility), the Court in *Feliciano v Dep't of Natural Resources,* 97 Mich App 101, 107-108; 293 NW2d 732 (1980), held:

"In summary, to the extent that *Daugherty, supra,* holds that the *entire spectrum* of the Department of Natural Resources statutory prescribed operation of the Pinckney Recreation Area is not a governmental function, we disagree with *Daugherty.* But to the extent that case holds that the conduct and operation of a bathing and swimming area is a nongovernmental function to which the defense of immunity does not apply, we agree with the decision." (Footnote omitted.)

Applied to the instant case, the holding in *Feliciano* guides our conclusion that governmental immunity is a valid bar to the plaintiffs' action against HCMA. The decedent's duties as a groundskeeper in this case were performed in support of the overall operation of the park, an activity generally performed only by government entities. Absent evidence that the decedent was working to accomplish a nongovernmental task at the time of the accident, the cause of action against HCMA was properly dismissed.

II

We next address the question whether Patricia

Ann Haselhuhn, a participant in the federal government's Comprehensive Employment and Training Act (CETA) program, 29 USC 801 *et seq.,* was an "employee" of the park and thus limited to recovery under the Worker's Disability Compensation Act. MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.*

Under MCL 418.131; MSA 17.237(131), an employee is limited to those benefits provided by the act to compensate for personal injuries received in the course of employment.[1] The act also defines those employees to whom the exclusive remedy provisions are applicable. In relevant part, MCL 418.161(1)(c); MSA 17.237(161)(1)(c), provides:

"An employee as used in this act shall mean:

\* \* \*

"(c) Every person engaged in a federally funded training program or work experience program which mandates the provision of appropriate workmen's compensation for participants and which is sponsored by the state or a county, city, township, village, or school district, or an incorporated public board or public commission in the state authorized by law to hold property and to sue or be sued generally, or any consortium thereof, shall be considered, for the purposes of this act, to be an employee of the sponsor and entitled to the benefits of this act. The sponsor shall be responsible for the provision of workmen's compensation and shall secure the payment of compensation by a method per-

---

[1] The statute provides:

"The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer. As used in this section and section 827 'employee' includes the person injured, his personal representatives and any other person to whom a claim accrues by reason of the injury to or death of the employee, and 'employer' includes his insurer, a service agent to a self-insured employer, and the accident fund insofar as they furnish, or fail to furnish, safety inspections or safety advisory services incident to providing workmen's compensation insurance or incident to a self-insured employer's liability servicing contract."

mitted under section 611. When a sponsor contracts with a public or private organization to operate a program, the sponsor may require the organization to secure the payment of compensation by a method permitted under section 611."

A pertinent Federal provision also provides:

"Except as otherwise provided, the following conditions are applicable to all programs under this chapter:

\* \* \*

"(d)(5) Appropriate workers' compensation or equivalent protection shall be provided to all participants". 29 USC 823(d)(5).

Applying the above statutes, it is clear that the decedent was an "employee" for purposes of the workers' compensation act. As such, the Macomb County Circuit Court committed no error in dismissing the plaintiffs' claim against defendants Armstadt and Watts.[2]

Affirmed.

---

[2] Our conclusion that the Worker's Disability Compensation Act provides an exclusive remedy for the decedent's fatal injuries precludes the necessity of considering whether defendants Armstadt and Watts could also claim governmental immunity.